## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT
### No. 22-1593

| | |
|---|---|
| SYLVESTER D. WINCE, | ) |
| | ) |
| Plaintiff/Appellant, | ) On appeal from the United States |
| | ) District Court for the Northern |
| vs. | ) District of Illinois, Eastern Division |
| | ) Case No. 1:19-cv-01546 |
| CBRE, INC., et al., | ) |
| | ) Judge Steven C. Seeger |
| Defendants/Appellees. | ) |

### RESUBMITTED

### BRIEF AND REQUIRED SHORT APPENDIX OF
### PLAINTIFF-APPELLANT SYLVESTER D. WINCE

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
312-277-7190
cjf@cjfredericklaw.com
ARDC # 6184001

**CIRCUIT  RULE  26.1     DISCLOSURE  STATEMENT**

Appellate Court No: _____22-1593_____

Short Caption: __Wince v. CBRE, Inc., et. Al._____

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   **[  ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED
            AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   Sylvester D. Wince.
   _____

   _____

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Calvita J. Frederick &   Associates
   _____

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

      N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

      N/A

Attorney's Signature: __s/ Calvita J. Frederick_____     Date: __July 11, 2022_____

Attorney's Printed Name: __Calvita J. Frederick_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** __\\__     **No** _____

Address: _____
   Post Office Box 802976 Chicago, Illinois 60680-2976

Phone Number: __312-421-5544_____     Fax Number: __312-277-7190_____

E-Mail Address: cjf@cjfredericklaw.com
            calvita.frederick@att.net,

rev. 01/08 AK

# <u>TABLE OF CONTENTS</u>

RULE 26.1 CORPORATE DISCLOSURES…………………………Preceding Page

TABLE OF AUTHORITIES ............................................................................ ii

JURISDICTIONAL STATEMENT.................................................................. 1

    I.  Jurisdiction of the District Court........................................................ 1

    II. Jurisdiction of the Court of Appeals.................................................. 2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................. 3

STATEMENT OF THE CASE ........................................................................ 3

    I.  Statement of Facts ............................................................................. 3

    II. Procedural History ......................................................................... 12

        A. Commencement of the Case……………………………………12

        B.  Partial Motion to Dismiss…………………………………………12

        C.  Summary Judgment. ................................................................ 13

SUMMARY OF ARGUMENT...................................................................... 13

ARGUMENT .................................................................................................. 15

I.     The District Court Erred by Granting the Defendants' Motion for Summary Judgment................................................................................................ 15

    A. The Standard of Review is De Novo……………………………………15

    B. The Court erred in finding that Wince did not meet his burden of presenting sufficient evidence that would allow a reasonable jury to find that Defendants discriminated against him based on his race……………………………………………………………………16

    C. The Court erred in finding that Wince did not meet his burden of presenting sufficient evidence that would allow a reasonable jury to find that Wince was constructively discharged. ............................... 24

II.    The District Court erred in granting the Defendant's Partial Motion to Dismiss, and thereby dismissing Count IV of Wince's Second Amended Complaint alleging violations of the Collective Bargaining Agreement……..30

    **A.** The Standard of Review is De Novo……………………………………30

B.  The District erred in finding that Wince's breach of contract claim was preempted by § 301 of the LMRA, because no term in the CBA needs to be interpreted…………………………………………………………………….31

C.  The District Court erred in dismissing Count IV of Wince's Second Amended Complaint alleging violations of the Collective Bargaining Agreement for failure to allege facts supporting the conclusion that the Union violated its duty of fair representation. …………………………………………………………33

CONCLUSION. ……………………………………………………………..37

CERTIFICATE OF COMPLIANCE WITH CIR. R. 30(a)&(b)

CERTIFICATE OF SERVICE ......................................................................... 34

REQUIRED SHORT APPENDIX...................................... Following Page 39

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed. 2d 202 (1986)...................................................................................... 16

*Ashcroft v. Iqbal* , 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)................ 31

*Bell Atl. Corp v. Twombly ,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ..........................................................................................31, 34

*Brownlee v. Kyocera SGS Precision Tools, Inc*. (N.D. Ind. 2022)....... 19, 24, 25

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ................................................ 16, 17

*Chaib v. Geo Grp., Inc.,* 819 F.3d 337 (7th Cir. 2016) ........................................ 16

*Chapin v. Fort- Rohr Motors, Inc.,* 621 F.3d 673 (7th Cir. 2010) ................ 27, 28

*Chatman v. Bd. Of Educ. of City of Chi.,* 5 F.4th 738 (7th Cir. 2021) 15, 19, 23

*Coleman v. Donahoe,* 667 F.3d 835 (7th Cir.2012)............................................. 26

*Courtney v. Biosound,* 42 F.3d 414 (7th Cir.1994) .............................................. 17

*Cunningham v. United Airlines, Inc.,* 2014 WL 441610 (N.D. Ill. Feb. 4, 2014) .. 36

*David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216 (7th Cir. 2017).................................................................................................... 21

*E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790 (10th Cir. 2007) ......................................... 29

*EEOC v. Univ. of Chicago Hasps.,* 276 F.3d 326 (7th Cir. 2002) ....................... 28

*Fischer v. Avanade, Inc.,* 519 F.3d 393 (7th Cir. 2008)...................................... 24

*Gordon v. FedEx Freight, Inc.,* 674 F.3d 769 (7th Cir. 2012)............................ 17

*Herron v. DaimlerChrysler Corp.,* 388 F.3d 293 (7th Cir. 2004)....................... 28

iii

*Hitchcock v. Angel Corps, Inc.,* 718 F.3d 733  (7th Cir. 2013) .......................... 19

*Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307 (7th Cir.1989). ........ 17

*Huri v. Office of the Chief Judge, Circuit Court of Cook Cnty,* 804 F.3d 826

(7th Cir. 2015). .................................................................................................. 18

*Igasaki v. Ill. Dep't of Fin. & Pro. Regul.,* 988 F.3d 948 (7th Cir. 2021) ....... 20

*In re Johnson,* 733 F.3d 722 (7th Cir. 2013) ...................................................... 19, 23

*Johnson v. Advoc. Health & Hosps. Corp.,* 892 F.3d 887 (7th Cir. 2018)

................................................................................................ 20, 21, 28, 29

*Lewis v. City of Chi.,* 496 F.3d 645  (7th Cir. 2007) ............................................ 20

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ........................... 18, 22

*Mosby– Grant v. City of Hagerstown*, 630 F.3d 326 (4th Cir. 2010) ....................... 29

*Nat 'l Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508 (7th Cir.

2008) .................................................................................................................. 16

*Oliver v. Joint Logistics Managers, Inc.,* 893 F.3d 408 (7th Cir. 2018) ......... 24

*Ortiz v. Werner Enters., Inc.,* 834 F.3d 760 (7th Cir. 2016) .............................. 22

*Passananti v. Cook Cnty.,* 689 F.3d 655, (7th Cir. 2012) ......................................... 28

*Purtue v. Wis. Dep't of Corr.,* 963 F.3d 598 (7th Cir. 2020); ....................... 20, 21

*Rogers v. Jewel Food Stores, Inc*., 2014 WL 4913673 (N.D. Ill. Sept. 30, 2014) ..... 37

*Russell v. Acme-Evans Co.,* 51 F.3d 64 (7th Cir. 1995) ................................. 19, 23

*See Keeton v. Morningstar, Inc.,* 667 F.3d 877 (7th Cir. 2012) ........................ 24

*Smith v. Jack Copper Transp. Co.*, (N.D. Ind. 2022) ......................................... 21

**Smith v. Rock-Tenn Servs., Inc.** , 813 F.3d 298 (6th Cir. 2016) ........................... 28

iv

***Souter v. Int'l Union UAWA Local 72***, 993 F. 2d 595 (7th Cir. 1993).....................36

***Spiegel v. McClintic***, 916 F.3d 611  (7th Cir. 2019) .................................................30

***Taha v. Int'l Bhd. of Teamsters,*** 947 F.3d 464 (7th Cir. 2020) ...............................30

***Tyburski v. City of Chicago,*** 964 F.3d 590 (7th Cir. 2020)...............................15

***Yeftich v. Navistar, Inc. ,*** 722 F.3d 911 (7th Cir. 2013)..........................30, 34, 35, 36

**Statutes**

28 U.S.C. §1291.................................................................…...............................2

29 U.S.C. § 185(a)...................................................................................31

42 U.S.C. § 1981...............................................................................1, 5, 11, 12

42 U.S.C. § 2000e et seq...........................................................................1, 12

<u>**JURISDICTIONAL STATEMENT**</u>

**I.       Jurisdiction of the District Court**

Plaintiff Sylvester Wince ("Plaintiff' or "Wince") is a resident of Chicago, Illinois. Defendant CBRE, Inc. ("Defendant" or "CBRE") is incorporated in Delaware and maintains its principal place of business in Los Angeles, California. Defendants Ernie Pierz (White), Pedro Ravelo (White), Maya Nash (Black), Richard Saulig (White), Sean Holland (White), and Jose Hernandez (Hispanic) are residents of the State of Illinois. On November 5, 2018, Wince filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights ("IDHR") alleging he was (1) subjected to harassment and disparate treatment based on his race (Black); and (2) retaliated against for complaining of alleged race discrimination and acting as a witness for another employee who filed a Charge of Discrimination against CBRE, which the EEOC dismissed on November 30, 2018 by issuing a Notice of Right to Sue. After filing an initial Complaint on March 4, 2019 and several amended complaints thereafter, Wince filed a November 28, 2020 Third Amended Complaint against Defendants that asserted the following claims: (1) race discrimination and retaliation against CBRE in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) race discrimination and retaliation in violation of 42 U.S.C. § 1981 against all Defendants; and (3) constructive discharge against CBRE. The District Court had jurisdiction over the Title VII and Section 1981 claims pursuant to 28 U.S.C. § 1343, and to the extent Wince is asserting a separate claim for constructive discharge,

supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a).

## II.     Jurisdiction of the Court of Appeals

On March 10, 2022, the district court granted Defendants' motion for summary judgment under Federal Rules of Civil Procedure 56.1 and entered judgment for the Defendants. On April 11, 2022, Wince filed a notice of appeal. (SA 769.) This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision of the district court that disposed of all claims in the district court.

### STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Did the district court err by granting Defendants' motion for summary judgment?

2.    Did the district court err by granting Defendants' partial motion to dismiss?

### STATEMENT OF THE CASE

#### I.    Statement of Facts

Plaintiff Sylvester D. Wince ("Wince" or "Plaintiff") filed this case to vindicate his civil right to be free from discrimination by his employer based on the color of his skin. *See* Third Amended Complaint ("TAC") at ¶¶17-75. Wince, a maintenance mechanic and stationary engineer, is a member of International Union of Operating Engineers Local 399 ("Local 399" or "the Union"), and his position is subject to a Collective Bargaining Agreement ("CBA"). *Id.* at ¶¶ 17-19.

Plaintiff Sylvester Wince started working in the facilities department at Northwestern Memorial Hospital in 2001. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶7 (Dckt. No. 141). Wince is black. *Id* at ¶ 4. In October 2010, the hospital contracted the facilities department out to Defendant CBRE, Inc., who hired Wince as a "Stationary Engineer." *Id* Stationary Engineers provide a range of services, including preventative maintenance and urgent and routine repairs on all sorts of equipment throughout the hospital campus. *Id* at ¶8. Stationary Engineers try to prevent problems from happening, but when they do happen, they make sure that the problems get fixed. Wince has a number of

credentials in his field. In 2001, the year that CBRE hired him, Wince received a bachelor's degree in organizational behavior from Northwestern University. *Id.* at ¶ 10. He is licensed as a Stationary Engineer with the City of Chicago. *Id.* And he holds several relevant certifications, including Basic Electricity 1, Refrigeration 1 and 2, and Indoor Air Quality 1 and 2. *Id.*

In 2013 or 14, Wince's former colleague, Charles Wilson, accused CBRE of discrimination in 2013 or 2014. *See* Defs.' Resp. to Pl's Statement of Facts, at ¶ 1 (Dckt. No. 137). An outside attorney for CBRE questioned Wince about discrimination in the workplace. *Id; see also* Pl's Resp. to Defs.' Statement of Facts, at ¶ 19 (Dckt. No. 141). Wince told the attorney that he believed that the company discriminated based on race, such as denying promotions to black employees. *See* Defs.' Resp. to Pl's Statement of Facts, at ¶ 1; Pl's Resp. to Defs.' Statement of Facts, at ¶ 19.

Although Wince had been employed at Northwestern Hospital for 18 years and had consistently performed the duties of his job, demonstrated his industriousness, and earned the respect of his fellow employees, Wince claimed that CBRE, and the individual defendants (collectively "Defendants") denied Wince overtime and bonus income, failed to promote him on four occasions, and did not award him holiday time off, despite Wince's seniority within the company. *Id.* at ¶¶ 20-53. Wince further claims that Defendants disregarded relief work protocols, harassed, and created a hostile work environment for Wince, by inter alia, giving him unfair and menial work assignments, issuing an undeserved

verbal reprimand and a written Performance Improvement Plan ("PIP"), subjecting him to degrading nicknames and placing racially derogatory statements on his lunchbox. ***Id.*** ¶¶54-75. Plaintiff also claims that he suffered retaliation for his protected activity including testifying on behalf of a fellow employee who brought a discrimination charge against CBRE and for filing his own charge of discrimination with the EEOC. After many years with the same employer, Plaintiff became fearful for his safety, believed that termination was eminent and that he had no choice but to resign his employment. Thereafter, Wince took a lesser job with inferior benefits. *See* TAC **,** ¶¶ 52-67.

Wince brought claims against Defendants for violation of several statutes. Defendants' filed a Partial Motion to Dismiss the Complaint on May, 30, 2019 seeking to dismiss some of the Plaintiff's claims.

After the full briefing of Defendants' Partial Motion to Dismiss the Complaint, the court dismissed Wince's claims under the Collective Bargaining Agreement (Count IV), the Fair Labor Standards Act (Count V), and the Illinois Wage Payment and Collections Act (Count VI) of the Plaintiff's Second Amended Complaint. ***See*** Memoranda Opinion and Order dated 10/26/20 [Dckt No. 84]. Following that Order, the following claims remained: violation of Title VII of the Civil Rights Act (Count I), violation of 42 U.S.C. § 1981 (Count II), retaliation (Count III), and constructive discharge (Count VII). [Dckt. No. 86]. Defendants moved for summary judgment. [Dckt. No. 122]. In 2015 and 2016, Wince applied for, but did not receive, four promotions. Wince

received interviews for at least three of the four open positions but was never selected for the respective positions. On each of the occasions, the Defendants hired individuals who were not black. The first attempt at a promotion took place in 2015. Wince applied for an Assistant Chief Engineer position on the first shift for the Lavin Family Pavilion. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 38 (Dckt. No. 141). Instead, management hired Andrew Brudniak, who is white. *Id.* The Defendants rely on a statement of the named Defendants to claim that Brudniak was more qualified. (Ex. 48/Holland **,-i,-i** 8-10, 13.) However, unlike Wince, Brudniak did not have Project Manager Certification, nor does he possess a college degree, as does Wince. Pl.'s Statement of Additional Facts, ¶29, Defendant's Exh # 48. The second attempt involved the same position. At some point in 2016, Brudniak left the position and somehow got his old job back.

In 2016, Wince applied for Chief Engineer. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 34 (Dckt. No. 141). He received an interview, but ultimately the job went to Defendant Jose Hernandez, who is Hispanic. *Id.* Wince made his fourth attempt at a promotion later that year. Wince applied for the Chief Engineer position a second time. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶36 (Dckt. No. 141). He received an interview, but the job went to Martin Walsh, a candidate from outside CBRE, and who is white. *Id.* During summary judgment proceedings, CBRE again relied upon the declaration of one of the defendants to support the contention that Walsh was the most qualified candidate.

Sometime in 2017, Wince complained to CBRE's Ethics Hotline that he was

not promoted because he is black.  ***See*** Defs.' Resp. to Pl.'s Statement of Facts, at ¶2 (Dckt. No. 137).  Wince also contends that the company deprived him of overtime.  He believes that the company unfairly denied him overtime on 18 occasions in 2018.  ***See*** Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 62 (Dckt. No. 141).

Wince believes that the company failed to pay him overtime on 18 specific days.  *Id* at ¶62.  Wince argues that his overtime denial violated the CBA.  *Id* at ¶63.  Specifically, he was upset because the individuals who received overtime were all in the Controls area, but the CBA did not mention Controls as a specific work group.  So, Wince filed a grievance.  ***Id.***  But his grievance didn't make it far, as it was denied.

Wince also claimed that CBRE's denial of overtime preventing him the opportunity to obtain a certificate in project management.  He completed one class but didn't take any more classes after the first one.  *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 44 (Dckt. No. 141).  He was "counting on . . . having overtime to pay for the course," but he "was stripped of having overtime, so [he] was unable to continue ... paying for the course."  *See* Wince Dep., at 22:11-15; *see also* Pl.'s Resp. to Defs.' Statement of Facts, at ¶44.  Nevertheless, the Defendants tried to show, without much of an explanation, that Wince had plenty of opportunity for additional overtime.  Defendants point to a spreadsheet showing that they offered Wince 830.5 hours of overtime in 2018.  *See* Defs.' Statement of Facts, at ¶44 (Dckt. No. 137); Wince Dep., at 210:11-18 (Dckt. No. 121-1, at 80 of

181).  The same document showed that he only accepted 56 hours.  *See* Defs.' Statement of Facts, at ¶ 44; *see also* Overtime List by Seniority 2018 (Dckt. No. 121-3, at 3 of 307); Ward Dec., at ¶3 (Dckt. No. 121-6, at 93 of96) (laying the foundation for the spreadsheet).

Wince testified that the document must be wrong.  He stated that he did "not know how they came up with these numbers," and that he believed he "may" have accepted and been offered "less" overtime.  *See* Wince Dep., at 211:23 -212:8 (Dckt. No. 121-1).  He testified: "I don't believe that that's correct either."  *Id* at 211:9-10.

Wince also raised an issue with how Defendants handled his requests for holiday leave.  In his 2017 Vacation Request Form, Wince checked "Yes" for every holiday, meaning that he wanted to take the day off, and he also put down dates for alternate days off next to those holidays.  *Id.* at ¶47.  On February 15, 2017, Assistant Facilities Manager Nathaniel Ward informed Wince that he received the alternate days that he had requested, other than the alternate day for December 31, 2017, because an "[a]lternate day must be in the same pay period or the following pay period."  *Id.* at ¶48.  Wince believes that the approval of only alternate days *(i.e.,* no holidays) violated the CBA.  *Id.* at ¶49.  Specifically, he believed that the CBA made clear that holiday vacations should be given based on seniority.  **Id.**  So, on March 27, 2016, he filed a grievance noting that "a co-worker with less seniority was granted some holidays off for 2017 and I was granted no holidays off," and that he "would like to have the requested holidays off that were given to the co-workers with less seniority." **Id.**

On April 3, 2017, Ralph Piotrowksi denied Wince's grievance. *Id.* at ¶50. Wince asked to continue with the grievance and take it to the next step, but the company denied it as untimely. *Id.* at ,-i 51.

Wince also presented evidence about discriminatory and demeaning comments at work. In 2016 or 2017, several cruel and highly inappropriate statements were written on Wince's lunchbox. He testified that unknown people wrote the n-word, as well as "you don't belong here" and "we don't want you here." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶77 (Dckt. No. 141).

Additionally, Wince took issue with his nickname around the hospital. Coworkers and management called him "Sly." *Id.* at ¶78. Wince testified that "people just felt abbreviate[ing] my name was easier to remember me by, but [he] didn't like it." *See* Wince Dep., at 12:8-9 (Dckt. No. 121-1, at 5 of 181). He believed it was racially derogatory because "[w]hen you think of someone as Sly, you think of someone sneaky or ... someone that's trying to do something. . not honest." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶79 (Dckt. No. 141). Finally, Wince also endured derogatory comments directed at him. Wince testified that during a meeting, when Wince was the only black individual in the room, Saulig "blurted out that we don't like you." *See* Wince Dep., at 289:24 - 290:12 (Dckt. No. 121-1, at 100 of 181). He testified that Defendant Ernie Pierz, who was the Director of Facilities at CBRE, told Wince "to look for project management roles elsewhere." *See* PL 's Resp. to Defs.' Statement of Facts, at ¶43 (Dckt. No. 141). He also told Wince that he "would not advance at CBRE" and "suggested that [he] get a certificate in project management."

*See* Wince Dep., at 315:15-19 (Dckt. No. 121-1, at 107 of 181).

Eventually, Wince began to see a therapist to manage anxiety and depression caused by work-related stress. ***See*** Defs.' Resp. to Pl.'s Statement of Facts, at **,-J** 17 (Dckt. No. 137). And by November 2018, Wince had enough. He filed a Charge of Discrimination with the EEOC, alleging racial discrimination and retaliation. ***See*** Pl.'s Resp. to Defs.' Statement of Facts, at ¶4 (Dckt. No. 141). Later that month, the EEOC dismissed the claim and issued Wince a Notice of Right to Sue. ***Id.*** So, in March 2019, Wince sued. *See* Cplt. (Dckt. No. 1).

The day after Wince filed the lawsuit, he received a verbal warning. ***See*** Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 13 (Dckt. No. 141). The warning came from Chief Engineer Jose Hernandez and Assistant Operations Manager Alejandro Corona for failing to respond to a work order about a water leak in a kitchen. ***Id.***

Wince disagreed with the warning. ***Id.*** He thought that Hernandez and Corona wanted to sully his work record because he was a "minority." ***Id.*** And he thought that Hernandez was trying to make his record look bad, while being friendly with the white engineers. ***Id.*** at ¶ 73.

This verbal warning was not the first run-in with Hernandez. Wince also believes that in 2018 or 2019, Hernandez was involved in giving him unfair work assignments at the trainee level while a trainee received all of Wince's assignments. ***Id****. at ¶74* Specifically, Hernandez assigned Wince to clean drains. ***See*** Pl.'s Statement of *Facts*, at ¶ 18 (Dckt. No. 135).

By October 2019, Wince had enough of CBRE. He left his job to take a

position at TL Services at the Hines VA Hospital. *Id* at ¶80. After Wince switched jobs, he also amended his complaint. ***See*** Second Am. Cplt. (Dckt.No. 52); Third Am. Cplt. (Dckt. No. 96). In November 2020, Wince filed the operative complaint. ***See*** Third Am. Cplt. The third amended complaint includes four counts: (1) Title VII race discrimination against CBRE; (2) race discrimination and retaliation under 42 U.S.C. § 1981 against CBRE, Hernandez, Ravelo, Pierz, Saulig, Holland, and Nash; (3) Title VII retaliation against CBRE; and (4) constructive discharge by CBRE through its agents Hernandez, Ravelo, Pierz, Saulig,Holland, and Nash. *Id* at **,-i,-i** 76-120. After discovery, Defendants moved for summary judgment on all four counts. *See* Defs.' Mtn. for Summ. J. (Dckt. No. 120).

## II.    Procedural History

### A.    Commencement of the Case

On November 5, 2018, Wince filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights ("IDHR") alleging he was (1) subjected to harassment and disparate treatment based on his race (Black); and (2) retaliated against for complaining of alleged race discrimination and acting as a witness for another employee who filed a Charge of Discrimination against CBRE, which the EEOC dismissed on November 30, 2018 by issuing a Notice of Right to Sue.  After filing an initial Complaint on March 4, 2019 and several amended complaints, Wince filed a November 28, 2020 Third Amended Complaint against Defendants that asserted the following claims: (1) race discrimination and retaliation against CBRE in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) race discrimination and retaliation in violation of 42 U.S.C. § 1981 against all Defendants; and (3) constructive discharge against CBRE.

### B.    Partial Motion to Dismiss

Defendants' filed a Partial Motion to Dismiss the Complaint on May, 30, 2019 seeking to dismiss the Plaintiff's claims related to part of the Plaintiff's claims. (Dckt. No. 59). After the full briefing of Defendants' Partial Motion to Dismiss the Complaint, the court dismissed Wince's claims under the Collective Bargaining Agreement (Count IV), the Fair Labor Standards Act (Count V), and the Illinois Wage Payment and Collections

Act (Count VI) of the Plaintiff's Second Amended Complaint. See Memoranda Opinion and Order dated 10/26/20 (Dckt No. 84). In particular, the Court found that Wince's claim under Count IV failed to state the necessary specific facts to support a claim. Following that Order, the following claims remained: violation of Title VII of the Civil Rights Act (Count I), violation of 42 U.S.C. § 1981 (Count II), retaliation (Count III), and constructive discharge (Count VII). (Dckt. No. 86).

### C.     Summary Judgment.

On April 5, 2021, Defendants filed a motion for summary judgment on claiming that there were no genuine disputes of material fact as to any of Wince's claims and summary judgment therefore should be granted in Defendant's favor. (Dckt. No. 120). Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.l(a), both parties submitted Statements of Material Facts as to Which There is No Genuine Issue, and responses thereto. The issue was briefed by both parties, and the Court rendered its Memorandum Opinion and Order granting the Defendant's motion for summary judgment on all counts and disposing of all the Plaintiff's claims on March 10, 2022. (Dckt. No. 143-144)

### SUMMARY OF ARGUMENT

The District Court erred in finding that the Plaintiff failed to meet his burden of presenting sufficient evidence that would allow a reasonable jury to find that Defendants discriminated against him based on his race. The singular question for the district court in this case was whether the plaintiff has introduced evidence that would

permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. In that regard, the District Court considers the evidence holistically. Here, the Plaintiff provided evidence that: 1) the Plaintiff had discussed his concerns about the treatment of African American employees in the past as part of an investigation, *See* Defs.' Resp. to PL's Statement of Facts, at ¶1; PL's Resp. to Defs.' Statement of Facts, at ¶19; 2) he filed two grievances and called the ethics hotline, *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶¶ 49-53, 61-62 (Dckt. No. 141); 3) the Plaintiff was subjected to racist slurs on his lunchbox, *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶77 (Dckt. No. 141); 4) he was told that he wasn't liked and that there wasn't any future for him at the company, *See* Wince Dep., at 289:24 - 290:12 (Dckt. No. 121-1, at 100 of 181), PL 's Resp. to Defs.' Statement of Facts, at ¶43 (Dckt. No. 141), and Wince Dep., at 315:15-19 (Dckt. No. 121-1, at 107 of 181); 5) he was consistently referred to by a nickname he didn't like Pl.'s Resp. to Defs.' Statement of Facts, at ¶78; and 6) it was demanded of him that he repair equipment for which he was unfamiliar and ill equipped, Pl.'s Statement of Additional Facts, ¶ 3; and 7) he was disciplined when he refused to put himself, the equipment, and the facility in danger. *Id.* Thus, where there were competing inferences about the reasons for the Defendant's actions or whether the Plaintiff was constructively discharged, a jury could reasonably find for the Plaintiff, and the court should have denied the motion for summary judgment.

The District Court also erred in dismissing the Wince's claim for violation of the Collective Bargaining Agreement by finding that Wince failed to allege the

necessary specific factual content to support a claim under the Collective Bargaining Agreement.

## ARGUMENT

I.     **The District Court Erred by Granting the Defendants' Motion for Summary Judgment**

     A.     **The Standard of Review is De Novo.**

An appellate court reviews a district court's grant of summary judgment de novo. *Chatman v. Bd. Of Educ. of City of Chi.,* 5 F.4th 738, 744 (7th Cir. 2021). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Furthermore, on appeal, the Court is to construe all facts and draw all reasonable inferences in the nonmoving party's favor, but the moving party may prevail "by showing an absence of evidence to support" the nonmoving party's claims. *Tyburski v. City of Chicago,* 964 F.3d 590, 597 (7th Cir. 2020). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific

15

facts showing the existence of a genuine issue for trial. ***See Anderson***, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences. ***See Chaib v. Geo Grp., Inc.,*** 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. ***See Nat 'l Athletic Sportswear, Inc. v. Westfield Ins. Co.,*** 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. ***See Celotex Corp.,*** 477 U.S. at 322; ***Gordon v. FedEx Freight, Inc.,*** 674 F.3d 769, 772-73 (7th Cir. 2012). Motions for summary judgment in employment discrimination cases must be approached "with added rigor," because credibility and intent are often central issues. ***Courtney v. Biosound,*** 42 F.3d 414, 418 (7th Cir.1994). "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." ***Id***. A grant of summary judgment which turns on the issue of discriminatory intent should be approached with "special caution." ***Courtney*** at 424. ***Holland v. Jefferson Nat'l Life Ins. Co.,*** 883 F.2d 1307, 1313 (7th Cir.1989).

**B.    The Court erred in finding that Wince did not meet his burden of presenting sufficient**

> evidence that would allow a reasonable jury
> to find that Defendants discriminated
> against him based on his race.

Title VII of the Civil Rights Act of 1964, as amended, is codified at 42 U.S.C § 2000e, *et seq.,* and makes it unlawful to discriminate or retaliate against an employee based on race, color, religion, sex or national origin. ***Huri v. Office of the Chief Judge, Circuit Court of Cook Cnty,*** 804 F.3d 826, 831 (7th Cir. 2015). Under the framework established in ***McDonnell Douglas Corp. v. Green,*** 411 U.S. 792 (1973), , a plaintiff must first establish that (1) he is a member of a protected class; (2) his performance met his employer's legitimate expectations; (3) despite this performance, he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside of the protected class more favorably. ***Skiba v. Ill. Cent. R.R. Co.,*** 884 F.3d 708, 719 (7th Cir. 2018).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. ***Id.*** at 728. "For a failure-to-hire claim, one example of a legitimate, nondiscriminatory reason a defendant may offer is that the individuals ultimately hired were better candidates than the plaintiff." ***Chatman v. Bd. of Educ. of City of Chicago***, 5 F.4th 738, 747 (7th Cir. 2021).

If the employer supplies a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to produce evidence that the defendant's reason is pretext for discrimination. ***See In re Johnson,*** 733 F.3d 722 (7th Cir. 2013) . In this context, pretext "means a lie, specifically a phony reason for some action." ***Russell v. Acme-Evans Co.,*** 51 F.3d 64, 68 (7th Cir. 1995). But "a showing of pretext alone is not enough; the plaintiff must also show that the explanations are a pretext for the prohibited animus." ***Hitchcock v. Angel Corps, Inc.,*** 718 F.3d 733, 740 (7th Cir. 2013)

    ***Brownlee v. Kyocera SGS Precision Tools, Inc***. (N.D. Ind. 2022).

An adverse employment action is typically "a significant change in employment status, such as hiring, firing, failing to promote**,** reassignment with significantly different responsibility, or a decision causing a significant change in benefits." ***Lewis v. City of Chi.,*** 496 F.3d 645,653 (7th Cir. 2007) (emphasis added).

When considering summary judgment on a race discrimination claim under Title VII and § 1981, the "singular question for the district court is whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." ***Igasaki v. Ill. Dep't of Fin. & Pro. Regul.,*** 988 F.3d 948, 957 (7th Cir. 2021)

18

(*quoting Purtue v. Wis. Dep't of Corr.,* 963 F.3d 598, 602 (7th Cir. 2020); see also *Johnson v. Advoc. Health & Hosps. Corp.,* 892 F.3d 887, 892 n.1 (7th Cir. 2018) ("We generally have applied the same prima facie requirements to discrimination claims brought under Title VII and section 1981."). To answer that question, the Court looks at the evidence holistically. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *see also Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 766 (7th Cir. 2016) ("[A]ll evidence belongs in a single pile and must be evaluated as a whole."). *Smith v. Jack Copper Transp. Co.*, (N.D. Ind. 2022).

At summary judgment, the critical question is whether the plaintiff has produced enough evidence to permit a reasonable factfinder to conclude that the plaintiff's race or other proscribed factor caused the adverse employment action. *See Purtue v. Wis. Dep't of Corr.,* 963 F.3d 598, 602 (7th Cir. 2020) (*quoting Johnson v. Advoc. Health & Hosps. Corp.,* 892 F.3d 887, 894 (7th Cir. 2018)). As previously stated, the Court looks at the evidence holistically. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *see also Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 766 (7th Cir. 2016) ("[A]ll evidence belongs in a single pile and must be evaluated as a whole.").

Employing the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), is one way that a plaintiff can

assist the court in sifting through the evidence to assess whether discrimination under Title VII is established. While the parties and the court have thus far considered the part of Plaintiff's claims as a failure to promote, the facts here are actually more akin to a failure to hire, particularly because of the Defendant's rationale for not promoting, or rather not hiring, the Plaintiff for open positions for which he applied.   Under the ***McDonell Douglas*** approach for a failure to hire, the plaintiff must first produce evidence establishing a four-part prima facie case: "(1) [h]e was a member of a protected class; (2) [h]e applied for and was qualified for the position sought; (3) [h]e was rejected for the position; and (4) the employer [hired] someone outside the protected group who was not better qualified than the plaintiff." ***Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church***, 733 F.3d 722, 728-29 (7th Cir. 2013).

   If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. at 728. "For a failure-to-hire claim, one example of a legitimate, nondiscriminatory reason a defendant may offer is that the individuals ultimately hired were better candidates than the plaintiff." ***Chatman v. Bd. of Educ. of City of Chicago***, 5 F.4th 738, 747 (7th Cir. 2021).

   If the employer supplies a legitimate, nondiscriminatory reason, the

burden then shifts back to the plaintiff to produce evidence that the defendant's reason is pretext for discrimination. *Johnson,* 733 F.3d at 728. In this context, pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.,* 51 F.3d 64, 68 (7th Cir. 1995). But "a showing of pretext alone is not enough; the plaintiff must also show that the explanations are a pretext for the prohibited animus." *Hitchcock v. Angel Corps, Inc.,* 718 F.3d 733, 740 (7th Cir. 2013).  However, where the employer's legitimate, nondiscriminatory reason for not hiring the plaintiff is that he was not as qualified as another candidate for the position, the Court proceeds directly to the question of pretext without first analyzing whether the plaintiff has established a prima facie case under the McDonnell Douglas framework. *See Keeton v. Morningstar, Inc.,* 667 F.3d 877, 885 (7th Cir. 2012) (skipping the plaintiff's initial burden and focusing on the employer's rationale and pretext); **see also** *Oliver v. Joint Logistics Managers, Inc.,* 893 F.3d 408, 413 (7th Cir. 2018) and *Brownlee v. Kyocera SGS Precision Tools, Inc.* (N.D. Ind. 2022). In *Brownlee*, the employer maintained that its decision not to interview Brownlee was because he didn't have the right skills and experience. The Defendant employer asserted that it hired a candidate with better qualifications than Brownlee. The Court then dispensed with the prima facie case and examined whether Brownlee produced evidence sufficient to support a finding that the employer's proffered

reasons were pretextual. ***Id. citing Fischer v. Avanade, Inc.,*** 519 F.3d 393, 402 (7th Cir. 2008). The court ultimately denied the Employer's motion for summary judgment finding that Brownlee had met its burden of producing sufficient evidence to support a finding that allowed him to defeat the employer's motion for summary judgment:

> . . . "[A] jury could reasonably infer that Brownlee's qualifications were not the real reason for his failure to receive an interview and that the real reason was a prohibited one. A reasonable interpretation of the facts may lead a jury to conclude that until [the hiring manager] viewed Brownlee's Facebook page, he was a qualified candidate that he planned to interview and perhaps, hire. But something on the Facebook page altered that decision. [The hiring manager] mentioned that Brownlee was from Michigan, but that explanation was corrected by [another employee]. Since that was the only explanation initially given by [the hiring manager] and it was a fact he learned by his Facebook research, a jury could conclude that some other information obtained from the Facebook page also influenced his decision. In contrast, a jury could also find Johnson's email to [another employee] innocuous and conclude that [the hiring manager] saw something lacking in Brownlee's resume and that, combined with the belief that he lived in Michigan, was enough to pass him by. But in the face of competing inferences, it is not this Court's job to weigh the evidence. ***Id.***

In sum, the court held that one suspicious fact, that the hiring manager viewed the candidate's Facebook page before making the decision not to consider the Plaintiff, was enough to create a genuine issue of material fact for the jury to decide. Likewise, this court has held that other, seemingly minor

pieces of evidence are enough to deny summary judgment and to allow a jury to determine whether there was discriminatory animus.  For example, this court has said that a substantial increase in Plaintiff's workload involving the sudden and anomalous shifting of multiple responsibilities from other employees, as well as receiving a new and unpleasant work assignment within a month after the plaintiff filed complaints can be evidence of discriminatory animus. ***See, e.g., Coleman v. Donahoe,*** 667 F.3d 835, 861 (7th Cir.2012); and ***Hitchcock v. Angel Corps, Inc.,*** 718 F.3d 733 (7th Cir. 2013**).**  Yet in the present case, the Court decided that it was its job to weigh competing inferences and found there was not sufficient evidence for by which a jury could find that race influenced the Defendants' adverse employment decisions where there was uncontroverted evidence of the following:  1) the Plaintiff had discussed his concerns about the treatment of African-American employees with in the past as part of an investigation, 2) he filed two grievances and called the ethics hotline; 3)  the Plaintiff was subjected to racist slurs on his lunchbox, 4) he was told that he wasn't liked and that there wasn't any future for him at the company, 5) he was consistently referred to by a nickname he didn't like; and 6) it was demanded of him that he repair equipment for which he was unfamiliar and ill equipped 7) he was disciplined when he refused to put himself, the equipment, and the facility in danger; and 8)  Brudniak, unlike Wince, did not have

Project Manager Certification, nor does he possess a college degree, as does Wince.

All of the above facts could be interpreted by a jury to make inferences about whether (or not) the Defendants acted with any discriminatory intent with regard to the Plaintiff's adverse employment decisions and whether or not the Plaintiff was constructively discharged. And in the face of such competing inferences, it was not the District Court's place to weigh such evidence.

> ### C.     The Court erred in finding that Wince did not meet his burden of presenting sufficient evidence that would allow a reasonable jury to find that Wince was constructively discharged.

Just as the District Court erred in finding that Wince did not meet his burden of presenting sufficient evidence that would allow a reasonable jury to find that Defendants discriminated against him based on his race, the Court also erred in finding that he similarly did not meet his burden regarding his constructive discharge claim. In its memorandum and order, the District Court explained the required standard for Wince's constructive discharge claim in this way:

> "A constructive discharge constitutes an adverse employment action." ***Chapin v. Fort- Rohr Motors, Inc.,*** 621 F.3d 673, 679 (7th Cir. 2010). It comes in two different forms.
> "In the first form, an employee resigns due to alleged discriminatory harassment." ***Id.*** When pursuing a constructive discharge claim about working conditions, a plaintiff must show conduct that is "even more egregious than the high standard for hostile work environment." ***Herron v. DaimlerChrysler Corp.,*** 388 F.3d 293,303 (7th Cir. 2004) (cleaned up). And "a hostile work environment claim requires sufficient evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the

harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." ***Boss,*** 816 F.3d at 920.

In the second form, "an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns." ***EEOC v. Univ. of Chicago Hasps.,*** 276 F.3d 326,332 (7th Cir. 2002).

For either form, "the plaintiff [must] show[] that he was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable." ***Chapin,*** 621 F.3d at 679.

However, what the District Court failed to mention in its decision is that whether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury. See e.g., ***Johnson v. Advocate Health & Hosps. Corp.,*** 892 F.3d 887 (7th Cir. 2018), citing ***Passananti v. Cook Cnty.,*** 689 F.3d 655, 669 (7th Cir. 2012), **Smith v. Rock-Tenn Servs., Inc.**, 813 F.3d 298, 310 (6th Cir. 2016), ***Mosby– Grant v. City of Hagerstown***, 630 F.3d 326, 335 (4th Cir. 2010), and ***E.E.O.C. v. PVNF, L.L.C.***, 487 F.3d 790, 798 (10th Cir. 2007). In ***Johnson,*** this Court restated the correct standard that to remove such a question of fact from the jury on summary judgment, the court would have to determine that no reasonable jury could find the conduct at issue severe or pervasive. 892 F.3d at 901. This Court found that "it is certainly possible that a reasonable jury could find that the conduct was pervasive or severe based on the claims of racially derogatory speech used by [the employer] supervisors. Once again, we remind ourselves that as we review the facts on summary judgment, we do so in the light

most favorable to the plaintiffs and refrain from resolving swearing contests." *Id.*, 892 F.3d at 901.

Therefore, when this court has placed an emphasis on the question of hostile work environment, being a question of fact for the jury, and when constructive discharge is related to the question of what constitutes a hostile work environment, the district court should not have been so quick to dismiss the Plaintiff's claim.

Therefore, the Court should have denied the Defendant's motion for summary judgment and allowed the Plaintiff to present his claims and evidence properly before a jury for them to decide.

## II. The District Court erred in granting the Defendant's Partial Motion to Dismiss, and thereby dismissing Count IV of Wince's Second Amended Complaint alleging violations of the Collective Bargaining Agreement.

### A.     The Standard of Review is De Novo.

The dismissal of a complaint under Rule 12(b)(6) warrants de novo review on appeal. *See Taha v. Int'l Bhd. of Teamsters,* 947 F.3d 464 (7th Cir. 2020), citing *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). An appellate court must construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor. *Id.*; *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (affirming Rule 12(b)(6) dismissal of unfair representation claim). Federal Rules of Civil Procedure 8 and 12 set the conditions for a sufficient pleading. Rule 8(a)(2) says a complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint falls

short of this requirement, it risks dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." A claim satisfies Rule 8(a)(2) —and avoids dismissal under Rule 12(b)(6) —if the complaint alleges facts that show the claim is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**B. The District Court erred in finding that Wince's breach of contract claim was preempted by § 301 of the LMRA, because no term in the CBA needs to be interpreted.**

The District Court found that Count IV of Winces' Second Amended Complaint, asserting common law breach of contract claim, was preempted under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). But that is wrong. Section 301 of the LMRA confers jurisdiction on federal courts over disputes involving violations of collective bargaining agreements. *See, e.g., Pelech v. Klaff-Joss, LP*, 828 F. Supp. 525, 530-31 (N.D. Ill. 1993). In order to ensure uniformity of adjudication, the Supreme Court held that "if the resolution of the state-law claim depends upon the <u>meaning</u> of a collective-bargaining agreement," the state-law claim is preempted. *Id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988)) (emphasis added). Thus, "an application of state law is preempted by § 301 of the [LMRA] only if such application requires the interpretation of a collective bargaining agreement." *Lingle*, 426 U.S. at 413. According to the Seventh Circuit's interpretation of *Lingle*, this

27

test requires looking at the same facts that would govern the outcome of a contract claim, but requiring preemption only where it would be necessary to interpret a term of the CBA. *See, e.g.*, *Pantoja v. Texas Gas and Transmission Corp.*, 890 F.2d 955, 959 at n. 1 (7th Cir. 1989).

Here, there is no need to interpret any term in the CBA that Sylvester alleges was breached. According to the plain allegations in the SAC, the CBA "specifies the protocol under which employees may request transfers within job classifications, seek promotions to new job classifications, and obtain overtime and holiday time off opportunities." Second Amended Complaint, ¶ 118 (Dckt No. 58). In addition, "[u]nder the operative CBA, promotions are granted based on experience and seniority. Seniority is defined as an employee's continuous service in the employee's current job title." *Id*. ¶¶ 119-20. Defendants violated these terms through their "consistent and deliberate improper conduct" when they "based on race, failed to follow written policies governing promotions, transfers, and overtime, as related to the Plaintiff." ¶ 121.

Nothing in these allegations requires a court to "interpret" or determine the "meaning" of any term in the CBA. *See Pantoja*, 890 F.2d at 959 n. 1. It appears that District Court simply misapprehended the law.  Under the District Court's analysis, any claim that is at all premised on the terms of the CBA is preempted because states that because Count IV is premised on the terms, the claim is preempted. That is simply not the law in this Circuit or even according to the Supreme Court. The distinction that the District Court fails to recognize is that there is a difference between disputes over differing interpretations of a contract's terms as opposed to the parties actually agreeing on the

interpretation of the terms but disputing whether or not the parties' actions violated those terms. Defendants have not made any allegations that any term of the CBA requires interpretation by this Court, and so Count IV should not have been found to preempted by section 301 of the LMRA. *See Lingle*, 426 U.S. at 413; *Pantoja*, 890 F.2d at 959 n.1.

<div style="text-align:center">

**C.    The District Court erred in dismissing Count IV of Wince's Second Amended Complaint alleging violations of the Collective Bargaining Agreement for failure to allege facts supporting the conclusion that the Union violated its duty of fair representation.**

</div>

As stated above, in this case the District Court, on October 26, 2020, granted the Defendant's partial motion to dismiss, and dismissed Count IV of Wince's Second Amended Complaint. See Memorandum Opinion and Order dated 10/26/20, (Dckt. No. 86). As stated above, Federal Rules of Civil Procedure 8 and 12 state the requirements for pleading.

This Court has previously stated that requirements for pleading in this way:

> ". . . [A] complaint must include facts showing a plausible—not merely "conceivable"—entitlement to relief. *Iqbal* , 556 U.S. at 683, 129 S.Ct. 1937. When a complaint's facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.' " *Id* . at 679, 129 S.Ct. 1937 (quoting FED. R. CIV. P. 8(a)(2)). That means a complaint must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id* . at 678, 129 S.Ct. 1937. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Id .* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955) (internal brackets omitted). In keeping with these principles, when considering the viability of a claim in the face of a Rule 12(b)(6) challenge, we may reject sheer speculation, bald assertions, and unsupported conclusory statements. See *Yeftich*, 722 F.3d at 915 ; *Iqbal* , 556 U.S. at 678, 681, 129 S.Ct. 1937 ; *Twombly* , 550 U.S. at

<div style="text-align:center">29</div>

555, 127 S.Ct. 1955.

*Taha v. Int'l Bhd. of Teamsters*, 947 F.3d 464 (7th Cir. 2020).

In the present case, the District Court found that like the Plaintiff in *Yefitch,* the Plaintiff in this case failed to allege with sufficient specificity, the allegations needed to support his claim. In *Yeftich,* this Court complained that the Plaintiff failed to provide virtually any information by which the Court could have reasonably inferred that, assuming the facts as true, that the Union violated its duty. 722 F.3d at 917. Specifically, this Court described the situation as follows:

> . . . [T]he plaintiffs do not identify who filed the grievances, give dates or even a time frame across which grievances were filed, or otherwise describe the contents of the grievances. They do not identify which union officials told which plaintiffs that their grievances were being processed, nor do they specify when these conversations occurred. And perhaps most importantly, they do not explain how long they waited after filing a grievance before concluding that it had been abandoned, or how they knew that such a wait time was an abnormal and arbitrary delay. Without at least *some* background factual content, the complaint's allegations about "abandoned" or "dead" grievances are wholly conclusory.
> *Id.* (emphasis in original).

In this case, despite the District Court's characterization that Wince provided fewer details than the Plaintiff in *Yeftich*, it certainly provided "*some*" background factual content for the Court not to dismiss Wince's claim. Wince's Second Amended Complaint did not merely state that conclusion, but instead alleged the following:

> 122. Plaintiff was denied the opportunity to have his grievance timely addressed with the Union related to overtime until Plaintiff gave up and hired legal counsel. 123. Plaintiff believed that Union protocol required Plaintiff's grievance to be timely addressed. . . . 126. Plaintiff filed grievances related to holiday time off including but not limited to complaints he pursued on March

27, 2017, April 30, 2017, May 1, 2017, May 25, 2017, August 31, 2017,
December 20, 2017, and January 30, 2018., as well as grievances filed related
to denial of overtime, denial of promotions and denial of PTO during the years
2016, 2017, 2018 and 2019.[1]  . . . 128. Local 399's conduct in processing the
various grievances filed by the Plaintiff was arbitrary, discriminatory and in
bad faith, to the point that the Union breached its duty of good faith and fair
representation.

Second Amended Complaint ¶¶ 122-128 (Dckt No. 52). In addition to providing sufficient detail of

the Union's actions that breached its duties of good faith and representation, the Second Amended

Complaint also made adequate allegations of the Union's acting in an arbitrary and discriminatory

way and in bad faith. Along with ¶ 128, the Complaint provided sufficient supporting detail to

state a claim for breach of duty and fair representation in the preceding paragraphs (*e.g.*, ¶¶ 122-

127). ***See, e.g., Souter v. Int'l Union UAWA Local 72***, 993 F. 2d 595, 598 (7th Cir. 1993). The

fact that Wince repeatedly asked for time off, for example, and was repeatedly denied, in spite of

his similarly situated colleagues being granted these requests, is prima facie evidence of the

Union's bad faith. ***See, e.g., Cunningham v. United Airlines, Inc.,*** 2014 WL 441610, at *10

(N.D. Ill. Feb. 4, 2014). Defendants' claim that the SAC contains insufficient facts under

***Iqbal/Twombly*** to support his Count IV claim against the Union is simply wrong. *See* ***Yeftich v.***

***Navistar, Inc.,*** 722 F.3d 911, 916 (7th Cir. 2013); ***Rogers v. Jewel Food Stores, Inc***., 2014 WL

4913673 at *5 (N.D. Ill. Sept. 30, 2014).

## CONCLUSION

Accordingly, Wince respectfully asks this Court to (1) reverse the Memorandum

Opinion, Order, and Judgment of March 10, 2022 granting the Defendants' motion for

---

[1] Given this detailed account of Wince's pursuit of grievances, it is unclear why the District Court asserted that Sylvester's allegations regarding the grievance process are "threadbare." *See* Memorandum Order and Opinion dated 10/26/20 (Dckt. No. 84 at 13.

summary judgment on all counts; (2) reverse the Memorandum Opinion and Order dated

October 26, 2020, dismissing Count IV of the Second Amended Complaint, and (3) remand

this case.

      Dated: July 11, 2022.            SYLVESTER D. WINCE,

                                      By:  /s/Calvita Frederick
                                            Counsel for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544

<u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff-Appellant Sylvester Wince, furnishes

the following in compliance with Fed. R. App. P. 32(g):

I hereby certify that this brief conforms to the rules contained in Fed. R. App. P.

32(a)(7) for a brief produced with a proportionally spaced font. The length of this

brief is 9,607 words.

DATED:     July 11, 2022

                         <u>/s/ Calvita J. Frederick</u>
                         Calvita J. Frederick, Esq.
                         P.O. Box 802976
                         Chicago, IL  60680-2976
                         (312) 421-5544
                         Illinois ARDC #6184001
                         Counsel for Plaintiff-Appellant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Brief of Plaintiff-Appellant Sylvester D. Wince, the annexed Required Appendix, and the Separate Appendix have been filed in the Office of the Clerk for the United States Court of Appeals for the Seventh Circuit, in electronic form on July 15, 2022, and also by delivering same to the Clerk of the Seventh Circuit Court of Appeals, 219 S. Dearborn Street, Chicago, IL 60604. I further certify that counsel for all parties are participants in this Court's electronic filing system and that paper copies of the brief and appendices have been served on counsel for Defendants, named below by regular mail.

Jill S. Vorobiev (6237734)
Amy I. Harwath (6324021)
Reed Smith LLP
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
Email: jvorobiev@reedsmith.com
Email: aharwath@reedsmith.com

/s/ Calvita J. Frederick

34

**RULE 30(d) STATEMENT**

Per Circuit Rule 30(d), Appellants' brief contains all of the materials required by Federal Rules

of Appellate Procedure 30 and Local Rule 30(a) and (b) are included in the appendix.  The materials are
attached to the Special Appendix and to a separate appendix filed herewith.

Date: July 11, 2022

        /S/ CALVITA J. FREDERICK
        Calvita J. Frederick
        Post Office Box 802976
        Chicago, Illinois 60680-2976
        312-421-5544
        ARDC # 6184001
        Attorney for Plaintiff-Appellant

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE THE MATTER OF: | ) |
| | ) |
| **SYLVESTER D. WINCE,** | ) **19 CV 01546** |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Judge Steven Seeger** |
| | ) |
| **CBRE, INC., a Delaware Corp., ERNIE PIERZ** | ) **Maj Judge Jeffrey T. Gilbert** |
| **Individually and in his Official Capacity as Alliance** | ) |
| **Director of Facilities at CBRE, RICHARD SAULIG** | ) |
| **Individually and in His Official Capacity as Director of** | ) |
| **Facilities at CBRE, SEAN HOLLAND, Individually and** | ) |
| **In His Official Capacity as Senior Manager of Facilities** | ) |
| **At CBRE, PEDRO RAVELO, Individually and in His** | ) |
| **Official Capacity as Alliance Director of Facilities at** | ) **NOTICE OF APPEAL** |
| **CBRE, JOSE HERNANDEZ, Individually and in His** | ) |
| **Official Capacity as Senior Manager of Facilities at** | ) |
| **And MAYA NASH, Individually and in Her Official** | ) |
| **Capacity as Human Resources Manager at CBRE,** | ) |
| **Defendants.** | ) |

## NOTICE OF APPEAL

Through undersigned counsel Calvita J. Frederick and Associates, PLAINTIFF

SYLVESTER D. WINCE hereby provides this Court and the parties with the instant Notice of

Appeal.

Plaintiff appeals this Court's March 10, 2022, Final Order [Dkt. #143-144] granting

Defendants' Rule 56(a) Motion for Summary Judgment, and all related orders and rulings

to the United States Court of Appeals for the Seventh Circuit.

DATED this 8th day of April 2022.

Respectfully submitted,
Sylvester D. Wince

By: s/ Calvita J. Frederick
Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421- 5544
ARDC # 6184001
cjf@cjfredericklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2022, I electronically filed the foregoing Notice of Appeal with

the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF

system. I also certify that I served the foregoing Notice of Appeal on the individuals referenced on the

Service List, below by CM/EFC system on April 8, 2022.

s/ Calvita J. Frederick
Attorney for The Plaintiff-Appellant

Jill S. Vorobiev (6237734)
Amy I. Harwath (6324021)
Reed Smith LLP
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
Email: jvorobiev@reedsmith.com
Email: aharwath@reedsmith.com

/s/Calvita J. Frederick

ILND 450 (Rev. 10/29/2016) Judgment in a Civil Action
Case: 1:19-cv-01546 Document #: 149 Filed: 04/11/22 Page 3 of 68 PageID #:2646
Case: 22-1593     Document: 24          Filed: 07/11/2022     Pages: 110

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Sylvester D. Wince,

Plaintiff(s),

v.

CBRE, Inc., et al.,

Defendant(s).

Case No. 1:19-cv-01546
Judge Steven C. Seeger

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐   in favor of plaintiff(s)
and against defendant(s)
in the amount of

which ☐ includes        pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☒   in favor of defendant(s) CBRE, Inc., Jose Hernandez, Sean Holland, Maya Nash, Ernie Pierz,
Pedro Ravelo, and Richard Saulig.
and against plaintiff(s) Sylvester D. Wince

---

☐   other:

---

This action was *(check one)*:

☐ tried by a jury with Judge        presiding, and the jury has rendered a verdict.
☐ tried by Judge        without a jury and the above decision was reached.
☒ decided by Judge Steven C. Seeger on Defendants' motion for summary judgment (Dckt. Nos. [120]).

Date:   3/10/2022                    Thomas G. Bruton, Clerk of Court

                                     Jessica J. Ramos, Deputy Clerk

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SYLVESTER D. WINCE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-1546 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CBRE, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sylvester Wince worked as a Stationary Engineer at Defendant CBRE, Inc. for

over 17 years. He helped keep the building of Northwestern Memorial Hospital up and running.

For the last few years, his job frustrated him. He didn't receive the promotions he wanted. He

thought that the company denied him overtime, holiday leave, paid time off, and tuition

reimbursements. And he felt like his coworkers disrespected him with racist language and

inappropriate nicknames. So, he eventually quit.

Wince later sued CBRE and several of his managers. He alleges that they discriminated

against him because he is black, and that they retaliated against him because of his complaints

about racism, including a complaint to the EEOC. After discovery, Defendants moved for

summary judgment.

For the reasons stated below, Defendants' motion is granted.

### Background

#### I.    Wince and CBRE

Plaintiff Sylvester Wince started working in the facilities department at Northwestern

Memorial Hospital in 2001. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 7 (Dckt. No. 141).

Wince is black. *Id.* at ¶ 4. Wince is one of the people who work hard behind the scenes to keep a large building up and running.

In October 2010, the hospital contracted the facilities department out to Defendant CBRE, Inc., who hired Wince as a "Stationary Engineer." *Id.* Stationary Engineers provide a range of services, including preventative maintenance and urgent and routine repairs on all sorts of equipment throughout the hospital campus. *Id.* at ¶ 8. Stationary Engineers try to prevent problems from happening, but when they do happen, they make sure that the problems get fixed.

Wince has a number of credentials in his field. In 2001, the year that CBRE hired him, Wince received a bachelor's degree in organizational behavior from Northwestern University. *Id.* at ¶ 10. He is licensed as a Stationary Engineer with the City of Chicago. *Id.* And he holds several relevant certifications, including Basic Electricity 1, Refrigeration 1 and 2, and Indoor Air Quality 1 and 2. *Id.*

Despite his qualifications, Wince didn't have the best reviews right off the bat. In his 2011 annual performance review, Wince received a rating of 2 out of 4.[1] *Id.* at ¶ 11; *see also* 2011 Manager Evaluation (Dckt. No. 121-2, at 154–57 of 216). Because of his poor review, Wince's manager at the time (Mike Carroll) placed him on a performance improvement plan. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 11 (Dckt. No. 141); Performance Improvement Plan (Dckt. No. 121-2, at 159–60 of 216).

---

[1] Wince attempts to dispute this fact. Wince argues that he is not sure that he had a 2011 review. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 11 (Dckt. No. 141). He cites his deposition where he testified that he does not remember if he received an evaluation in 2011 and thought that a copy of the evaluation may be inauthentic. *See* Wince Dep., at 344:20 – 346:15 (Dckt. No. 121-1, at 114 of 181). But earlier in his deposition, he remembered receiving and acknowledging the review. *Id.* at 128:10-12. And the evaluation suggests that he acknowledged it, too. *See* 2011 Management Evaluation (Dckt. No. 121-2, at 157 of 216). So, Wince only has evidence that he does not *remember* receiving an evaluation, while Defendants provided evidence that he did receive one.

Later, Wince became involved in a race-related incident experienced by another

employee. His former colleague, Charles Wilson, accused CBRE of discrimination in 2013 or

2014. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 1 (Dckt. No. 137). An outside attorney

for CBRE questioned Wince about discrimination in the workplace. *Id.*; *see also* Pl.'s Resp. to

Defs.' Statement of Facts, at ¶ 19 (Dckt. No. 141). Wince told the attorney that he believed that

the company discriminated based on race, such as denying promotions to black employees. *See*

Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 1; Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 19.

In his complaint, Wince claims that he suffered race discrimination in a number of

different ways during his time at CBRE. He claims that he experienced issues with promotions,

overtime, holidays, paid time off, bonuses, and tuition reimbursements, among other problems.

He also contends that he was subjected to offensive language from his coworkers.

His claim includes a lot of different components, meaning different types and different

episodes of alleged discrimination. So the Court will walk through them, one at a time.

## II.    Promotions

The first aspect of the claim involves the lack of promotions.

In 2015 and 2016, Wince applied for, but did not receive, four promotions. None of the

individuals who received the promotions were black. Wince claims that each denial of a

promotion was a discrete example of race discrimination. And he alleges that, when viewed

together, they paint a picture of race discrimination.

Wince applied for two positions: Chief Engineer and Assistant Chief Engineer. He

applied for each position twice, for a total of four attempts.

According to the 2010 Collective Bargaining Unit,[2] the Chief Engineer is a bargaining unit position. The Chief Engineer is responsible "for the safe economical operation of the Building(s) and for all persons employed under the direction of the Chief Engineer." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 32 (Dckt. No. 141). The Assistant Chief Engineer is a bargaining unit position one level below the Chief Engineer. *Id.*

There are different rungs in the ladder, with Stationary Engineer on the bottom and Chief Engineer on the top. The general progression for the internal promotion of Stationary Engineers is first to Lead Engineer, and then to Assistant Chief Engineer, and then to Chief Engineer. *See* Defs.' Statement of Facts, at ¶ 33 (Dckt. No. 123); Holland Dec., at ¶ 3 (Dckt. No. 121-6, at 43 of 216).

Wince was a Stationary Engineer. So, his applications for Assistant Chief Engineer and Chief Engineer required him to skip a step or two.[3] Nevertheless, he applied for each position twice. He never got the jobs.

---

[2] The parties argue over the authenticity of the CBAs that govern the employment actions in this case. In the end, the admissibility of the CBAs doesn't affect the Court's decision. The outcome would not change if the CBAs were admissible or inadmissible. But the Court does offer findings on which CBAs it can consider. Defendants point to three CBAs. *See* Defs.' Statement of Facts, at ¶ 21 (Dckt. No. 123). The first is from 2010, the second is from 2015, and the third is from 2018. *Id.* Defendants can only rely on admissible evidence for summary judgment, so Wince or someone else must authenticate the CBAs. The parties dispute authenticity, but the dispute stems from Wince's own contradictory testimony. During questioning by defense counsel, Wince reviewed the CBAs, confirmed that he was familiar with each one, and answered questions about them. *See* Wince Dep., at 72:4-24, 94:12 – 95:3, 118:15-24 (Dckt. No. 121-1, at 20, 26 of 181). Then, when questioned by his own lawyer, Wince backpedaled. He answered questions about the 2010 CBA, confirming its authenticity. *Id.* at 338:6 – 339:17. But, then he expressed doubt that he could authenticate the 2015 or 2018 CBAs. *Id.* at 339:21 – 343.9. Wince never recanted his testimony about the 2010 CBA, and Defendants provided a declaration to authenticate the 2018 CBA. *See* Nash Dec., at ¶¶ 4–5 (Dckt. No. 121-6, at 52 of 96). So, the 2010 and 2018 CBAs are admissible evidence. But the 2015 CBA is left in limbo by Wince's wavering testimony. Defendants may not rely on the 2015 CBA to succeed at this stage.

[3] Wince disputes that any progression existed, arguing that "CBRE managers could promote anyone they wanted to any position." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 33 (Dckt. No. 141). But he doesn't have any citation for that position. He argues that Brudniak skipped ahead "from Service Engineer to Assistant Chief Engineer in April of 2016." *Id.* But Brudniak moved laterally (from

The first attempt at a promotion took place in 2015. Wince applied for an Assistant Chief Engineer position on the first shift for the Lavin Family Pavilion. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 38 (Dckt. No. 141). Instead, management hired Andrew Brudniak, who is white. *Id.*

The second attempt involved the same position. At some point in 2016, Brudniak left the position (and maybe the company, but the parties don't say), but later came back. *Id.* at ¶ 40. There was a rebid process involving several different bargaining unit positions, including Brudniak's Assistant Chief Engineer position. *Id.* at ¶ 41. Brudniak bid for his old position, and a panel selected him. *Id.* So Brudniak got his old job back.

The parties agree that Sean Holland (a white man) played a role in the decision to not promote Wince for that position. At the time, Holland was the Director of Facilities, and was responsible for hiring individuals into leadership roles. *See* Holland Dec., at ¶ 2 (Dckt. No. 121-6, at 43 of 216). But the parties disagree about who else was involved.

Wince believes that, in addition to Holland, Defendants Richard Saulig and Pedro Ravelo (both white men) played a role in keeping him from getting the job. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 38 (Dckt. No. 141); Wince Dep., at 318:19 – 320:3 (Dckt. No. 121-1, at 107–08 of 181). (The parties do not provide any information on Saulig's or Ravelo's positions at CBRE.)

According to Wince, Saulig didn't like him. Wince testified that during a meeting, when Wince was the only black individual in the room, Saulig "blurted out that we don't like you." *See* Wince Dep., at 289:24 – 290:12 (Dckt. No. 121-1, at 100 of 181). But that interaction is untethered to the chronology. The parties do not reveal when, exactly, that incident happened. It

---

Assistant Chief Engineer to Assistant Chief Engineer). *See* 4/22/16 Email (Dckt. No. 135-4, at 84 of 97). He didn't skip any steps or receive a promotion out of the typical order.

is not clear if it happened before, or after, or contemporaneous with the decision to hire Brudniak. The parties simply say that it happened "once . . . at a meeting." *See* Pl.'s Resp. to Defs.' Statement of Fact, at ¶ 70 (Dckt. No. 141).

Wince believes that Ravelo played a role in the decision, too. But Wince admitted that he had no specific evidence about Ravelo's involvement. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 72 (Dckt. No. 141). Wince presented no evidence that Ravelo disliked Wince, or otherwise had any animus toward him at all.

CBRE paints a different picture about who played a role in the decision to hire Brudniak instead of Wince. Holland testified that he, Jim Collins, John Gory, and Ralph Piotrowski selected Brudniak for the job. *See* Holland Dec., at ¶ 9 (Dckt. No. 121-6, at 36 of 96). Holland explained the reasons for hiring, and later rehiring, Brudniak for that position. "Brudniak was already an [Assistant Chief Engineer]," and he "also had the best qualifications, skills and ability to perform the job among the candidates because of his previous work experience and performance." *Id.* at ¶ 10; *see also id.* at ¶ 12.

In 2016, Wince made his third attempt. Undeterred by his denial of the Assistant Chief Engineer promotion, Wince applied for Chief Engineer. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 34 (Dckt. No. 141). He received an interview, but ultimately the job went to Defendant Jose Hernandez, who is Hispanic. *Id.* At the time, Hernandez was a Controls Assistant Chief Engineer, so he was two rungs of the ladder above Wince. *Id.*

Wince argues that CBRE promoted Hernandez only because he was "liked." *Id.* at ¶¶ 34–35. In his deposition, Wince also expressed a belief that CBRE promoted Hernandez because he was not black. *See* Wince Dep., at 319:11-18 (Dckt. No. 121-1, at 29, 108 of 181). But that fact does not appear in the Rule 56.1 statement. *See* L.R. 56.1(d).

6

In his deposition, Wince claimed that Hernandez had less experience, education, and certifications than he did. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 34 (Dckt. No. 141). Yet, when asked, Wince admitted that he didn't know (1) Hernandez's educational background or certifications; (2) how long Hernandez had been an Assistant Chief Engineer; (3) his prior experience before joining CBRE in 2013; (4) how he performed in his interview; or (5) who selected him for the job. *Id.*

The record includes evidence about why CBRE hired Hernandez. Holland testified about Hernandez's prior work experience (*e.g.*, at Johnson Controls), as well as his licenses and certifications. Holland confirmed that Hernandez "had the best qualifications, skills and ability to perform the job among the candidates." *See* Holland Dec., at ¶¶ 4–6 (Dckt. No. 121-6, at 35 of 96).

Wince made his fourth attempt at a promotion later that year. Wince applied for the Chief Engineer position a second time. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 36 (Dckt. No. 141). He received an interview, but the job went to Martin Walsh, who is white. *Id.*

Wince believes that CBRE chose Walsh because he is white. *Id.* Wince based that belief on the fact that he "had not been promoted to any other positions and [he] didn't see anyone other than Caucasians being hired for those positions." *See* Wince Dep., at 110:5-9 (Dckt. No. 121-1, at 30 of 181). But when pressed on Walsh's prior experience or qualifications for the job, Wince knew nothing. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 36 (Dckt. No. 141); Wince Dep., at 109:13 – 110:2.

Holland explained why he hired Walsh. In his view, "Walsh had the best qualifications, skills and ability to perform the job among the candidates because of the leadership and technical engineering skills he developed in his prior work experience." *See* Holland Dec., at ¶ 7 (Dckt.

7

No. 121-6, at 36 of 96). Holland also noted that Walsh worked "for a total of over 20 years in engineer, lead engineer, Assistant Chief Engineer, and Chief Engineer roles." *Id.* Importantly, he worked as a Chief Engineer for 14 years at two different real estate firms before moving to CBRE. *Id.*

Above and beyond the qualifications of the other candidates, Holland gave another reason why Wince didn't get a promotion. "Sylvester Wince was not selected for any of the above-referenced roles because he did not have more than the basic qualifications and certifications to perform the work that any general Stationary Engineer could be assigned." *See* Holland Dec., at ¶ 13 (Dckt. No. 121-6, at 37 of 96).

Sometime in 2017, Wince complained to CBRE's Ethics Hotline that he was not promoted because he is black. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 2 (Dckt. No. 137). He is not sure what, if anything, CBRE did with that complaint. *Id.*

**III.    Overtime**

Wince also contends that the company deprived him of overtime. He believes that the company unfairly denied him overtime on 18 occasions in 2018. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 62 (Dckt. No. 141).

The alleged denials involve Wince's work in the so-called "Controls" area. (The parties do not reveal what the "Controls" area does.) Wince worked in Controls from 2015 or 2016 until November 23, 2016.[4] *Id.* at ¶ 9. He also worked there afterwards, as necessary. But when CBRE denied his overtime, Wince was no longer officially in Controls.

---

[4] Wince disputes that he worked in Controls "to the extent that there was no such thing as 'controls' area according to the CBA." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 9 (Dckt. No. 141). But Wince does not dispute that he worked in a position known (at least informally) as the Controls group.

8

Wince believes that the company failed to pay him overtime on 18 specific days. (The record includes a chart.) *Id.* at ¶ 62. On 5 of the 18 days, no one in Controls received overtime. *Id.* So, on 13 of the 18 days in question, someone else in Controls received overtime (one person, per day), but Wince did not. *Id.* Some of those employees were black, and others were not. A black employee received overtime on 5 of the 13 days. *Id.*

In other words, Wince claims that he should have gotten overtime on 18 days. On 5 of the 18 days, a black employee got overtime. On 8 of the 18 days, a non-black employee got overtime. On 5 of the 18 days, no one got overtime.

Wince argues that his overtime denial violated the CBA. *Id.* at ¶ 63. Specifically, he was upset because the individuals who received overtime were all in the Controls area, but the CBA did not mention Controls as a specific work group. *Id.* Wince does not fully explain why it matters that Controls was not in the CBA. But the Court infers that, because CBRE gave overtime to people in a group not found in the CBA, Wince thought something fishy was happening with the overtime assignments.

So, Wince filed a grievance. *Id.* But his grievance didn't make it far. It was denied, and Wince does not recall whether he pursued it further.[5] *Id.*

**IV.    Holidays**

Wince also raised an issue with how Defendants handled his requests for holiday leave. He believes that Defendants repeatedly denied his holiday requests because he is black.

---

[5] Wince argues that he did request to take his grievance to the next level. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 63 (Dckt. No. 141). But his evidence shows a request to take a grievance about paid time off – not overtime – to the next level. *See* 4/3/17 Emails (Dckt. No. 135-3, at 54–55 of 100). So, Defendants' fact that Wince did not recall whether he pursued his grievance further is admitted as uncontroverted by specific evidence. *See* L.R. 56.1(e)(3).

As an aside, in the initial status report filed after reassignment (*i.e.*, when the case was reassigned from Judge Kennelly), Plaintiff's counsel made a startling statement. She represented that Wince had "applied for holiday time off, but in 17 years he has never been allowed holiday time off for Christmas Eve, Christmas Day, July 4th, New Year's Eve or New Year's Day." *See* Initial Status Report for Reassigned Case, at 2 (Dckt. No. 38). This Court drew attention to that assertion at the very first hearing (and it prompted a sidebar to discuss the case). That representation, it seems, did not pan out. There is no such evidence in the record.

Taking a step back, the record doesn't include much information about what percentage of employees can take the day off for a holiday. A large hospital requires people there, presumably every hour of every day. The hospital can't take the day off, so the building can't take the day off, so (presumably) some employees can't take the day off, either. Everyone can't take the day off on a holiday, but *some* can. This Court does not know how likely it would be for any particular employee to get the day off for any particular holiday. Some employees get the day off, others can't.

Wince submitted a Vacation Request Form for 2016, and he checked "No" for every holiday, meaning that he didn't want the day off, except New Year's Day. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 46 (Dckt. No. 141).[6] Wince received an email on May 3, 2016, from Assistant Facilities Manager Nathaniel Ward, who approved his request for a vacation day on New Year's Day, pending overtime coverage. *Id.* So, he requested a vacation day for only one holiday, and got it.

---

[6] Wince "questions the validity of this form because it doesn't make sense that he would not want any holidays off in 2016." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 46 (Dckt. No. 141). That may be so, but he offers no testimony or other evidence that places the validity of the form into question. And Defendants provided a declaration that authenticated the forms. *See* Ward Dec., at ¶ 26 (Dckt. No. 121-6, at 96 of 96).

In his 2017 Vacation Request Form, Wince checked "Yes" for every holiday, meaning that he wanted to take the day off, and he also put down dates for alternate days off next to those holidays. *Id.* at ¶ 47. On February 15, 2017, Ward informed Wince that he received the alternate days that he had requested, other than the alternate day for December 31, 2017, because an "[a]lternate day must be in the same pay period or the following pay period." *Id.* at ¶ 48.

Wince believed that the approval of only alternate days (*i.e.*, no holidays) violated the CBA. *Id.* at ¶ 49. Specifically, he believed that the CBA made clear that holiday vacations should be given based on seniority. *Id.* So, on March 27, 2016, he filed a grievance noting that "a co-worker with less seniority was granted some holidays off for 2017 and I was granted no holidays off," and also that he "would like to have the requested holidays off that were given to the co-workers with less seniority." *Id.*

On April 3, 2017, Piotrowksi denied Wince's grievance. *Id.* at ¶ 50. Piotrowski explained that Wince had filled out his time-off request to work alternate days in lieu of the holidays. *Id.* Wince did not know if anyone filled out the forms the same way that he did, or how CBRE handled similar requests. *Id.* But Wince believed that giving him the alternate days for vacation "was intentional and based on [his] race." *Id.* (quoting Wince Dep., at 361:12-17 (Dckt. No. 121-1, at 118 of 181)).

Wince asked to continue with the grievance and take it to the next step, but the company denied it as untimely. *Id.* at ¶ 51. CBRE informed Wince that if the opportunity arose to grant time off without an adverse effect on other employees and without the requirement of overtime payments to cover the time off, then CBRE would consider making this time available for Wince. *Id.*

11

Meanwhile, on August 4, 2017, Ward reached out to Ciaran Officer, the white, less senior co-worker who Wince complained had received holidays off. *Id.* at ¶ 52. Ward asked if Officer would swap Labor Day, Christmas Day, or New Year's Day with Wince, but Officer declined, saying that he had already made plans. *Id.*

Later that month, CBRE's Director of Human Resources informed Wince's union that CBRE would allow Wince to take off Labor Day, Thanksgiving Day, Christmas Day, or New Year's Day. *Id.* at ¶ 53. CBRE would have another employee work the holiday, but would only do it for one holiday because the alternate coverage required premium pay. *Id.*

Wince chose to take off Labor Day, and his union asked that he be allowed to keep September 5 (the alternate day that he originally received) off, too. *Id.* at ¶ 54. CBRE allowed him to take off both days. *Id.*

But Wince wanted to take off more than two days. So, he requested Christmas and New Year's Day off, too. *Id.* at ¶ 55. The parties dispute what happened next.

Defendants offered evidence that Ravelo emailed Wince on December 20, 2017, reminding him that his two days of paid time off around Labor Day resolved his grievance. *See* Defs.' Statement of Facts, at ¶ 55 (Dckt. No. 123). The email also said that they had previously communicated that any additional requests would not be considered unless they didn't create a need for overtime coverage. *Id.* And, since Christmas and New Year's Day would need overtime coverage, they would not be accommodated. *Id.* Wince responded, "Enjoy your holiday! Confirmed." *Id*; 12/20–21/17 Emails (Dckt. No. 121-4, 36–37 at 92).

Wince argues that he "never received e-mails stating that his grievance was resolved by allowing him 2 days of PTO around the Labor Day Holiday." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 55 (Dckt. No. 141). But his deposition citation isn't on point. There, he

12

testified that he didn't recall receiving or seeing the emails about "being given Labor Day as compensation for having been denied certain holidays." *See* Wince Dep., at 371:7-17 (Dckt. No. 121-1, at 121 of 181). In other words, Wince testified that he never saw the initial negotiation between the company and the union, not that he did not see the follow-up emails explaining that his grievance had already been resolved.

So, the fact that Wince received the emails on December 20, 2017 is not disputed. But Wince did not appreciate the fact that the company and the union negotiated a resolution of his grievance without his knowledge. He thought that Defendants and his union discussed his grievance without him "because they were doing things behind [his] back and because of [his] being African-American they wasn't open and straightforward." *Id.* at 372:10-13.

In 2018, Wince took a somewhat different strategy toward requesting leave for holidays. In his 2018 Vacation Request Form, Wince once again requested all the holidays off, but apparently did not request any alternate days. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 57 (Dckt. No. 141). On February 15, 2018, Defendants denied his request for leave on the holidays due to insufficient coverage. *Id.*

In 2019, Wince received slightly more holiday time off, but not much. Wince asked to take off Independence Day, Labor Day, Christmas Day, and New Year's Day. *Id.* at ¶ 59. On February 15, 2019, Ward informed Wince that he would get New Year's Day off, but not any of the other three days because of insufficient coverage. *Id.*

Defendants note that black Stationary Engineers with more seniority than Wince received vacation days on holidays instead of him. In 2017, CBRE gave Mark Jackson Christmas off, and didn't schedule John Morris to work. *Id.* at ¶ 56. In 2018, CBRE gave Ruthla Robertson vacation days on Memorial Day, Independence Day, Thanksgiving Day, and Christmas, and

13

gave Jackson Thanksgiving Day and Christmas off. *Id.* at ¶ 58. And CBRE didn't schedule

Morris to work Labor Day. *Id.* And in 2019, CBRE gave Robertson vacation days on Labor

Day and Christmas, gave Morris vacation days on Independence Day, Labor Day, and

Christmas, and gave Jackson Independence Day and Christmas off. *Id.* at ¶ 60.

Regardless, Wince asserts that Defendants did not give him holiday time because of his

race. *Id.* at ¶ 61. He testified that he knew of others (but couldn't remember their names) that

CBRE "offered the holidays off behind closed doors that were of Caucasian descent or white."

*Id.* (quoting Wince Dep., at 200:8 – 201:12, 251:6 – 252:2 (Dckt. No. 121-1, 78, 91 of 181)).

**V.    Paid Time Off**

Holidays were not the only issue when it came to paid time off. Wince argues that

Defendants deprived him of non-holiday time off, also. But the amount is up in the air.

In March 2019, Wince believed that his paid time off balance was inaccurate. *See* Pl.'s

Resp. to Defs.' Statement of Facts, at ¶ 66 (Dckt. No. 141). So, he set up a meeting with

Defendant Maya Nash, the Human Resources Business Partner. *Id.*

But after the meeting, Wince left thinking that CBRE would never figure out how much

he was owed.[7] *Id.* Wince thought that CBRE's calculation of paid time off violated the CBA.

*Id.* at ¶ 67.

Wince testified that it was "possible" that it was based on his race. *Id.* But he did not

know if anyone else had similar issues, one way or the other. *Id.* There is no evidence in the

record that other employees received paid time off, but Wince didn't. And in his brief, Wince

does not quantify the amount of paid time off that he should have received, but didn't receive.

---

[7] Wince disputes that he couldn't figure out how much he owned, noting that he "prepared a chart showing how much PTO he was entitled to but CBRE denied it." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 66 (Dckt. No. 141). But for a cite, he just wrote, "cite needed Wince's chart of missed PTO." *Id.* Suffice it to say, that does not create a genuine dispute. *See* L.R. 56.1(e)(3).

There are significant gaps in the record. Wince never articulates how much paid time off, in his view, he should have received. At best, the record simply includes the assertion by Wince that he didn't receive the right amount of paid time off. And he believes that he didn't receive the full amount because of his race.

## VI.   Bonuses

Wince also takes issue with how CBRE handled his employment bonuses. Namely, Wince believes that the company undercompensated him in 2018 and 2019.

In 2018, CBRE changed its bonus incentive program. *Id.* at ¶ 64. (As an aside, the parties never explain how CBRE did bonuses before 2018.) That year, all employees in what the parties call "Work Group 1" (Wince's work group) received an annual bonus of $879.38, while Work Groups 2 and 3 received bonuses of $1,096.37 and $1,058.08, respectively. *Id.*

Wince does not dispute the fact that "all employees represented by the Union in Work Group 1 – including Wince – received an annual bonus of $879.38 while Work Groups 2 and 3 received higher amounts . . . ." *Id.* Wince simply states that "[Defendant Ernie] Pierz was instrumental in having Plaintiff's bonus reduced." *Id.* Pierz was the Director of Facilities at CBRE, but beyond that, the parties give very little information about his role. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 12 (Dckt. No. 137).

Wince does not explain how or why his bonus was reduced. And he never explains how his 2018 bonus could give rise to a discrimination claim when everyone in his Work Group received the same bonus.

Then, in 2019, CBRE shifted the bonus program again. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 65 (Dckt. No. 141). The members of every group received the same bonus: $824.05. *Id.*

15

So, everyone received the same bonus in 2019. Everyone's bonus went down from 2018 to 2019. Wince received $824.05, and so did everyone else.

Once again, Wince does not dispute those facts, except to add that "Pierz was instrumental in having Plaintiff's bonus reduced." *Id.* at ¶¶ 64–65.

The details beyond Wince's statement about the bonuses are hazy. Wince testified that Pierz made the bonuses "conditioned upon a performance evaluation." *See* Wince Dep., at 316:10-14 (Dckt. No. 121-1, at 107 of 181). But he doesn't reveal how the bonuses were calculated, or how his evaluations factored into his bonus, if at all.

Wince testified that Pierz changed the bonus structure "based on discrimination." *Id.* at 316:20-24. But Wince never explained how this change related to discrimination. It is unclear how Wince could have a discrimination claim if everyone in his Work Group received the same bonus.

## VII.    Tuition Reimbursement

Wince also believes that CBRE denied him a tuition reimbursement in 2018. Basically, Wince believes that CBRE prevented him from taking management courses by denying him overtime. And he believes that CBRE denied him overtime opportunities because he is black.

At some point, Pierz encouraged Wince to take a project management course.[8] *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 43 (Dckt. No. 141). Wince didn't take the comment as a helpful suggestion, or as an expression of confidence. Quite the opposite. Wince interpreted that comment as discriminatory. *Id.* at ¶ 68.

---

[8] Wince disputes this fact "because Pierz is the individual who told [him] to look for project management roles elsewhere." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 43 (Dckt. No. 141). He cites his deposition, which does support both that Pierz "indicated that [he] would not advance at CBRE" and "suggested that [he] get a certificate in project management." *See* Wince Dep., at 315:15-19 (Dckt. No. 121-1, at 107 of 181). But that passage doesn't contradict Defendants' asserted fact. If anything, it confirms it, and simply adds further details.

That comment came in the context of a broader conversation about Wince's future with CBRE, including the likelihood of a leadership position. Pierz basically was telling Wince that a leadership role wasn't in the cards for him at CBRE. So, Pierz told Wince that if he wanted a leadership position, he needed to look elsewhere. *Id.*

Wince doesn't know if Pierz had that conversation with anyone else. *Id.* Regardless, he decided to take a project management course on Pierz's advice. *Id.*

In June 2018, Wince completed one class at the University of Chicago. *Id.* at ¶ 43. Pierz requested approval for unscheduled paid time off for Wince to take the course, writing that he was "a big supporter in folks seeking further training/education and would like to try to accommodate [Wince's] request." *Id.* at ¶ 45.

CBRE approved the cost of the course in the amount of $1,250. *Id.* And Northwestern Memorial Hospital, through an agreement with CBRE, reimbursed the cost, too. *Id.* The record does not reveal whether Wince had to pay anything out-of-pocket for the course. It appears from the record that CBRE paid the entire cost of the course. *Id.* ("CBRE approved the cost of the course (which was reimbursed by NMH pursuant to a CBRE agreement with NMH) in the amount of $1,250 . . . .").

Wince never finished the entire course, though. (The parties are not clear, but it seems as though the *course* included a number of different *classes.*) *See* Wince Dep., at 274:9-12 (Dckt. No. 121-1, at 96 of 181). He didn't take any more classes after the first one. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 44 (Dckt. No. 141). He was "counting on . . . having overtime to pay for the course," but he "was stripped of having overtime, so [he] was unable to continue . . . paying for the course." *See* Wince Dep., at 22:11-15; *see also* Pl.'s Resp. to Defs.' Statement of

17

Facts, at ¶ 44. The parties don't explain what it means that Wince was "stripped of having overtime."

The parties then pivot to a discussion of the availability of overtime, without much of an explanation. The link between the availability of overtime and the availability of courses is not entirely clear. The parties agree on statements such as the following: "Wince did not take any more courses because he needed overtime to pay for the course." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 44 (Dckt. No. 141). Maybe the company didn't reimburse employees in full, and Wince couldn't afford the courses without additional overtime.

Putting that mystery aside, Defendants presented evidence that Wince had plenty of opportunity for additional overtime. Defendants point to a spreadsheet showing that they offered Wince 830.5 hours of overtime in 2018. *See* Defs.' Statement of Facts, at ¶ 44 (Dckt. No. 137); Wince Dep., at 210:11-18 (Dckt. No. 121-1, at 80 of 181). The same document showed that he only accepted 56 hours. *See* Defs.' Statement of Facts, at ¶ 44; *see also* Overtime List by Seniority 2018 (Dckt. No. 121-3, at 3 of 307); Ward Dec., at ¶ 3 (Dckt. No. 121-6, at 93 of 96) (laying the foundation for the spreadsheet).

But at deposition, Wince testified that the document must be wrong. He stated that he did "not know how they came up with these numbers," and that he believed he "may" have accepted and been offered "less" overtime. *See* Wince Dep., at 211:23 – 212:8 (Dckt. No. 121-1). He testified: "I don't believe that that's correct either." *Id.* at 211:9-10.

Next, Wince argues that the CBA had a list of employees eligible for tuition reimbursement, and his name was not on the list. *See* Pl.'s Statement of Facts, at ¶ 24 (Dckt. No. 135); *see also* Wince Dep., at 339:11-17 (Dckt. No. 121-1, at 113 of 181). But the list Wince cites was from the *2010* CBA. *See* 2010 Collective Bargaining Agreement (Dckt.

No. 121-2, at 151 of 216). It names "employees that are currently receiving tuition reimbursement from NMH." *Id.*

A list made eight years before Wince was even eligible for a tuition reimbursement tells the Court nothing. And Wince provides no other evidence supporting his denied overtime or reimbursement.

## VIII. Discriminatory Comments

Wince also presented evidence about discriminatory comments at work.

In 2016 or 2017, several cruel and highly inappropriate statements were written on Wince's lunchbox. He testified that unknown people wrote the n-word, as well as "you don't belong here" and "we don't want you here." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 77 (Dckt. No. 141).

Wince doesn't know who wrote those offensive comment. And importantly, he never told anyone at CBRE what had happened. *Id.* Instead, he blotted out the slur and statements. *Id.*

Additionally, Wince took issue with his nickname around the hospital. Coworkers and management called him "Sly." *Id.* at ¶ 78. Wince testified that "people just felt abbreviate[ing] my name was easier to remember me by, but [he] didn't like it." *See* Wince Dep., at 12:8-9 (Dckt. No. 121-1, at 5 of 181). He believed it was racially derogatory because "[w]hen you think of someone as Sly, you think of someone sneaky or . . . someone that's trying to do something . . . not honest." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 79 (Dckt. No. 141).

But he never told anyone at CBRE that he felt that way. There is no evidence in the record that he asked anyone to stop using the nickname, or that he complained to management.

## IX.   This Lawsuit, Final Issues, and Wince's Departure

Eventually, Wince began to see a therapist to manage anxiety and depression caused by work-related stress. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 17 (Dckt. No. 137). And by November 2018, Wince had enough. He filed a Charge of Discrimination with the EEOC, alleging racial discrimination and retaliation. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 4 (Dckt. No. 141). Later that month, the EEOC dismissed the claim and issued Wince a Notice of Right to Sue. *Id.* So, in March 2019, Wince sued. *See* Cplt. (Dckt. No. 1).

But even after he filed the lawsuit, Wince still felt discriminated against. The day after he filed, Wince received a verbal warning (which came without any loss of pay). *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 13 (Dckt. No. 141). The warning came from Chief Engineer Jose Hernandez and Assistant Operations Manager Alejandro Corona for failing to respond to a work order about a water leak in a kitchen. *Id.*

Wince disagreed with the warning. *Id.* He thought that Hernandez and Corona wanted to sully his work record because he was a "minority." *Id.* And he thought that Hernandez was trying to make his record look bad, while being friendly with the white engineers. *Id.* at ¶ 73.

This verbal warning was not the first run-in with Hernandez. Wince also believes that in 2018 or 2019, Hernandez was involved (in some vague way) in giving him unfair work assignments at the trainee level because he is black. *Id.* at ¶ 74. Meanwhile, a trainee received all of Wince's assignments. *Id.*

Specifically, Hernandez assigned Wince to clean drains. *See* Pl.'s Statement of Facts, at ¶ 18 (Dckt. No. 135). But Wince's job description states that Stationary Engineers are responsible for maintenance on "all aspects of plumbing" and that they "[m]ay perform less technical duties as required, such as minor plumbing." *See* Defs.' Resp. to Pl.'s Statement of

Facts, at ¶ 18 (Dckt. No. 137); *see also* Stationary Operating Engineer Job Description (Dckt. No. 121-1, at 176–77 of 181).

Wince never suffered a loss of pay, and he could not estimate how many times these unfair assignments happened. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 74 (Dckt. No. 141). He simply noted that he believed Hernandez was involved, and that he had more seniority so it should not have happened. *Id.*

By October 2019, Wince had enough of CBRE. He left his job to take a position at TL Services at the Hines VA Hospital. *Id.* at ¶ 80.

The parties disagree on how to define his departure. Defendants say that Wince "quit," and note that he "received a higher level of what [he] was doing, meaning that he was in a high role position" at the new job. *Id.* But Wince says that "he did not quit." *Id.* He argues that he "was constructively terminated," instead. *Id.* "Although he was in a supervisory position, he was making less money and had benefits that were not as good as CBRE, especially his healthcare." *Id.*

After Wince switched jobs, he also amended his complaint. *See* Second Am. Cplt. (Dckt. No. 52); Third Am. Cplt. (Dckt. No. 96). In November 2020, Wince filed the operative complaint. *See* Third Am. Cplt.

The third amended complaint includes four counts: (1) Title VII race discrimination against CBRE; (2) race discrimination and retaliation under 42 U.S.C. § 1981 against CBRE, Hernandez, Ravelo, Pierz, Saulig, Holland, and Nash; (3) Title VII retaliation against CBRE; and (4) constructive discharge by CBRE through its agents Hernandez, Ravelo, Pierz, Saulig, Holland, and Nash. *Id.* at ¶¶ 76–120.

After discovery, Defendants moved for summary judgment on all four counts. *See* Defs.'
Mtn. for Summ. J. (Dckt. No. 120).

## Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of

establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond

the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See*

*Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving

him the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th

Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of

the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l*

*Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary

judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in

favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*,

674 F.3d 769, 772–73 (7th Cir. 2012).

## Analysis

Defendants moved for summary judgment on all four counts. The first three counts are

federal statutory claims. Count I is a race discrimination claim under Title VII. Count II is a

race discrimination and retaliation claim under section 1981. And Count III is a retaliation claim under Title VII. Courts apply the same *prima facie* requirements for claims under Title VII and section 1981. *See Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007) (collecting cases). So, the Court will not differentiate between the two statutes. Instead, it will assess the race discrimination claims first, and then will turn to retaliation.

Count IV alleges constructive discharge under state law. But Illinois law does not recognize an independent cause of action for constructive discharge. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 708 (7th Cir. 2004) ("[T]he [Illinois Supreme Court] 'has thus far declined to recognize a cause of action for retaliatory constructive discharge.'") (quoting *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 243 Ill. Dec. 46, 722 N.E.2d 1115, 1121 (1999)). So, Defendants' motion for summary judgment is granted for Count IV, to the extent that Wince is bringing constructive discharge as an independent cause of action.

The Court will consider the facts alleging constructive discharge in its analysis of the race discrimination and retaliation claims. One of the necessary conditions of a successful discrimination claim is an adverse employment action. And Wince argues that he faced an adverse employment action through constructive discharge. *See* Pl.'s Resp. in Opposition to Mtn. for Summ. J., at 10 (Dckt. No. 133) ("A reasonable factfinder could conclude that Plaintiff's race . . . was the cause of Defendant CBRE's constructive termination of Plaintiff from its employment.").

As a preview, Wince has not carried his burden. Wince did not provide enough evidence to support a claim of race discrimination or retaliation. As a result, Defendants' motion for summary judgment is granted on Counts I, II, and III.

23

## I.     Race Discrimination

The first question is whether Wince provided enough evidence to support a verdict by a reasonable jury that CBRE discriminated against him on the basis of his race.

In ruling on a race discrimination claim at summary judgment, the Court considers "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Igasaki v. Illinois Dep't of Fin. & Prof'l Regul.*, 988 F.3d 948, 957 (7th Cir. 2021).

Traditionally, a plaintiff has two routes to prove discrimination. One option is the direct method. "A plaintiff proceeds under the direct method of proof by showing 'either direct or circumstantial evidence of intentional racial discrimination.'" *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (citation omitted).

Another route to prove discrimination is the indirect method, meaning the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that approach, "the plaintiff has the initial burden of producing evidence showing that (1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016). If the plaintiff establishes those elements, "the burden shift[s] to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.* (cleaned up).

24

In recent years, the Seventh Circuit has pivoted away from a strict divide between the direct method and the indirect method, and has moved toward a more holistic approach. "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence." *Ortiz*, 834 F.3d at 765.

Wince begins his brief by discussing the *McDonnell Douglas* framework, and then acknowledges the existence of *Ortiz*. *See* Pl.'s Resp. in Opposition to Mtn. for Summ. J., at 8–9 of 31 (Dckt. No. 133). In the pages that follow, Wince appears to discuss the evidence as a whole, seemingly in the spirit of *Ortiz*. But he never clarifies if he is applying *McDonnell Douglas*, or simply throwing all the evidence at the Court and declaring that it adds up to race discrimination.

For instance, when discussing his failed promotion, Wince notes that he "has established a prima facie case of discrimination," and walks through the *McDonnell Douglas* test. *Id.* at 13–14 of 31. Additionally, he includes an entire section discussing why Defendants' legitimate, nondiscriminatory reasons are pretextual, so it sounds like he is using the indirect method. *Id.* at 23–25 of 31. In other places, Wince makes arguments about the totality of the evidence and *Ortiz*. *See, e.g.*, *id.* at 16 of 31 (discussing *Ortiz* in the context of his denial of holidays); *id.* at 25 of 31 (discussing *Ortiz* to establish a pattern and practice of discrimination).

So, this Court will approach the issue as follows. First, this Court will consider each category of alleged discrimination (*e.g.*, the lack of promotions, holiday time off, and so on), and will consider whether the evidence is sufficient to give rise to a claim using the indirect method. Then, this Court will take a step back, view the record as a whole, and consider if there is enough evidence to support a finding of race discrimination by a reasonable jury.

25

In his brief, Wince argued that he suffered race discrimination in the following areas: (1) promotions; (2) overtime; (3) holidays; (4) paid time off; (5) bonuses; (6) tuition reimbursement; (7) verbal reprimand; (8) work assignments; and (9) constructive discharge. This Court will address each topic, in that order.

## A.    Promotions

To start, Wince claims that the company discriminated against him because he applied for four promotions, but did not get any of them. *Id.* at 11–14 of 31.

A failure to promote can be an adverse employment action for a discrimination claim. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016). To make a *prima facie* case, Wince would need to show that "(1) [he] was a member of a protected class; (2) [he] was qualified for the position sought; (3) [he] was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position." *Id.*

Only the last element is at issue here. The question is whether Wince came forward with sufficient evidence that the company promoted someone who was not better qualified.

Wince did not receive two promotions to Assistant Chief Engineer and two promotions to Chief Engineer. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶¶ 34, 36, 38, 41 (Dckt. No. 141). But Wince fails to confront the evidence about the normal progression to these positions. Promotions typically happen in the following order: (1) Stationary Engineer; (2) Lead Engineer; (3) Assistant Chief Engineer; and finally (4) Chief Engineer. *Id.* at ¶ 34. So, Wince wanted to skip a few spots in line.

The people who did get the promotions didn't jump the line. Brudniak was an Assistant Chief Engineer (at Prentice Women's Hospital) before Holland hired him (twice) as an Assistant

26

Chief Engineer. *Id.* at ¶¶ 39–41. Hernandez was an Assistant Chief Engineer before becoming a Chief Engineer in 2015. *Id.* at ¶ 35. So they were two steps above Wince in the corporate ladder.

Unlike Brudniak and Hernandez, Walsh was hired from outside the company. But Walsh had over 14 years of experience as a Chief Engineer at other companies when he got the job at CBRE in 2016. *Id.* at ¶ 37.

Wince failed to present evidence that the promotions went to less qualified people. If anything, the record confirms that CBRE hired people with better qualifications than Wince. They had experience in higher-level positions. And in comparison, Wince had only "basic qualifications and certifications to perform the work that any general Stationary Engineer could be assigned." *See* Holland Dec., at ¶ 13 (Dckt. No. 121-6, at 37 of 96).

Wince also presented evidence that Saulig didn't like him. Recall, Saulig "blurted out that we don't like you" at some point at some meeting. *See* Wince Dep., at 289:24 – 290:12 (Dckt. No. 121-1, at 100 of 181). But there is no evidence that Saulig didn't like him because of his race. And the incident in question is not tied to any particular time in the chronology. So, Saulig didn't like Wince, and said so at one point. But that's about it.

In sum, Wince has not come forward with sufficient evidence to support a jury verdict in his favor that he was passed over for promotions because of his race.

## B.   Overtime

Wince argues that CBRE denied him overtime on 18 occasions in 2018. *See* Pl.'s Resp. in Opposition to Mtn. for Summ. J., at 14 of 31 (Dckt. No. 133); *see also* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 62 (Dckt. No. 141).

27

To make a *prima facie* case, Wince would need to provide evidence that he (1) is a member of a protected class, (2) was meeting the defendant's legitimate expectations, (3) suffered an adverse employment action, and (4) was not treated as favorably as similarly situated employees outside of his protected class. *See Simpson*, 827 F.3d at 661. For his overtime claim, Wince failed to provide evidence about any similarly situated individuals.

Of the 18 occasions that Wince did not receive overtime, CBRE gave other employees overtime 13 times. *Id.* at ¶ 62. So, on 5 of 18 days, no one received overtime. Everyone received the same thing: nothing.

Hypothetically speaking, it is conceivable that someone could bring a discrimination claim about overtime, even though *no one* received overtime. Imagine if only one employee was eligible, because only one employee worked extra hours. And imagine if a racist boss refused to pay overtime to that employee, even though he or she earned it, because of his or her race. In that scenario, the fact that no one received overtime would not preclude a claim.

But there is no such evidence in the record here. No one received overtime on 5 of the 18 days. That fact does not get Wince very far, because there is no evidence in the record that his denial of overtime had anything to do with his race.

After putting aside those 5 times, that leaves 13 days out of 18 when some other employee received overtime, but Wince did not. On 5 of the 13 times, another black employee received overtime. They are not outside his protected class. *See Arizonovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702–03 (7th Cir. 2012) ("The 'similarly-situated' inquiry is a 'flexible, common-sense one,' but it at least requires that the plaintiff name a comparator outside her protected class.") (citation omitted).

That leaves 8 of the 18 times. In those instances, a non-black employee received overtime, but Wince did not. Still, the record about those episodes is barren. There is nothing in the record showing that they were similarly situated as Wince. For example, Wince did not come forward with evidence that he performed the same work as those other employees.

Wince presented evidence that those employees received overtime, and he did not. That's a piece of the puzzle, but it's not enough to put together a picture of discrimination. Wince would need to come forward with evidence that they were similarly situated, that is, that Wince did the same thing as the other employees (*e.g.*, working the same number of hours, or doing the same task, and so on), but received different pay.

And here, there's no such evidence. Without evidence that the other employees are similarly situated, there is not a sufficient basis for a finding of discrimination. *See Orton-Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014) ("In general, a plaintiff who believes another individual is similarly situated must at least show that this comparator (1) dealt with the same supervisor, (2) was subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish his conduct or the employer's treatment of him.") (cleaned up).

Wince has no evidence that similarly situated individuals outside his protected class received better treatment involving overtime. Without that evidence, he can't make a *prima facie* claim about overtime.[9]

---

[9] Even if those eight individuals were similarly situated, Wince provided no evidence – or even argument – for race discrimination. The parties mostly bicker about whether the CBAs authorized overtime to employees specifically in the Controls group, even though the Controls group is not a separate entity in the CBAs. *See* Defs.' Mem. in Support of Mtn. to Dismiss, at 4 (Dckt. No. 122); Pl.'s Resp. in Opposition to Mtn. for Summ. J., at 14 of 31 (Dckt. No. 133). Wince's statement of facts make clear that his argument hinges on the CBA: "The CBA did not have 'controls' listed as its own entity. Plaintiff worked for controls, since controls is part of his role as a Stationary Engineer. He was passed over for controls overtime despite his seniority in that group many times." *See* Pl.'s Statement of Facts, at ¶ 10

29

**C.     Holidays**

Wince argues that CBRE denied his request for holiday leave from 2016 through 2019. *See* Pl.'s Resp. in Opposition to Mtn. for Summ. J., at 14–17 of 31 (Dckt. No. 133). Once again, Wince has not come forward with enough evidence to support a discrimination claim.

Wince provided evidence that he did not receive several holidays off between 2016 and 2019. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶¶ 46–47, 57, 59 (Dckt. No. 141); Pl.'s Statement of Facts, at ¶ 6 (Dckt. No. 135). But he did not present evidence of race discrimination.

In 2016, Wince checked "No" for every holiday except New Year's Day, which he received off. *Id.* at ¶ 46. So, that year, he has no evidence of an adverse action. He didn't ask, so he didn't get.

In 2017, Wince received no holidays off, and he provided evidence that a non-black, less senior employee (Ciaran Officer) received several holidays off that year. *Id.* at ¶¶ 48, 52. Even if Officer qualifies as a comparator, Defendants offered a legitimate, nondiscriminatory reason for the decision.

When filling out his form, Wince checked "Yes" for every holiday, but he listed alternate days next to each holiday, too. *Id.* at ¶ 47. Wince says that he "put down alternate days because he knew it was unlikely he would be approved for the holidays off, but wanted time at least near the holiday." *Id.* And, sure enough, Defendants approved Wince for time off on these alternate days, rather than the holidays. *Id.* at ¶ 48.

---

(Dckt. No. 135). That argument has nothing to do with race. Wince says that Defendants violated the CBA. But violating the CBA is not a Title VII claim. It's a contract claim. All Wince provides is a potential violation of a contract, with nothing more. From that, a reasonable jury could not find race discrimination.

Wince asked to take off either the holidays or the alternate days that he selected, and the company gave him time off on those alternate days. And even then, after Wince raised the issue, Defendants worked to get him at least one holiday off. *Id.* at ¶¶ 52–54.

Wince argues that CBRE's explanation is pretextual. According to him, "[a] better explanation, especially since Wince has not been allowed holiday time off in 17 years, is that the denial of holiday time off as related to this Plaintiff was deliberate and intentional." *See* Pl.'s Resp. in Opposition to Mtn. for Summ. J., at 16 of 31 (Dckt. No. 133).

Pretext "is not 'just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action.'" *Barnes v. Bd. of Trs. of Univ. of Illinois*, 946 F.3d 384, 389–90 (7th Cir. 2020) (cleaned up) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008)). To show pretext, a plaintiff must come forward with evidence that "(a) the employer's nondiscriminatory reason was dishonest; and (b) the employer's true reason was based on a discriminatory intent." *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007) (quotation marks and citation omitted).

Wince offers no evidence of pretext. He boldly claims that he was denied holiday time for 17 years. *See* Pl.'s Resp. in Opposition to Mtn. for Summ. J., at 16 of 31 (Dckt. No. 133). That's a strong assertion, but Wince doesn't back it up. Wince does not present evidence that he requested holiday leave for 17 years, but didn't get it.

Wince offered nothing to show that Defendants' reason was a lie. In fact, Defendants' reason seems quite legitimate. On the request form, Wince wrote down alternate dates, and Defendants gave him those dates off. Without any evidence that this explanation "was dishonest," Wince has no claim about holiday time in 2017.

Finally, in 2018 and 2019, Wince requested all or several holidays off. *Id.* at ¶¶ 57, 59.

He only received 2019 New Year's Day off. *Id.* at ¶ 59. Regardless, he provided no evidence of

similarly situated non-black employees who received holidays off. And, in fact, Defendants

provided evidence that several, more senior black employees received those holidays off instead

of Wince. *Id.* at ¶¶ 58, 60. Without evidence of a non-black, less senior employee who received

favorable treatment for holidays, Wince has failed to come forward with enough evidence to

support a claim of race discrimination.

In sum, Wince has not presented evidence that could support a verdict by a reasonable

jury that the company denied him time off for holidays based on his race.

### D.    Paid Time Off

Wince's next argument is that the miscalculation of his 2019 paid time off was an

adverse employment action. *See* Pl.'s Resp. in Opposition to Mtn. for Summ. J., at 17–18 of 31

(Dckt. No. 133). But Wince provided no evidence that Defendants denied him paid time off in

2019. And he also provided no evidence of similarly situated individuals for comparison.

In his response brief, Wince argues that "the CBA provided that once he reached his 15th

year of employment, he would be entitled to 240 hours of PTO plus he would accrue an

additional 9.3 hours per pay period. Wince was able to calculate the time, but CBRE through the

HR representative Nash refused to grant him the time earned." *Id.* at 17 of 31. But Wince

provided no evidence that Nash refused to grant him the time off that he earned. The citation in

his brief is to an unrelated statement of fact. *See* Pl.'s Statement of Facts, at ¶ 16 (Dckt.

No. 136). And no other statement of fact provides evidence of refused paid time off.

Even if Wince had evidence that Nash denied him paid time off, he still would not have

enough to get to a jury. Wince agreed that he only thought "it was 'possible' that [the denial]

32

was based on his race." *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 67 (Dckt. No. 141).

And he "does not know if anyone else had similar issues one way or the other." *Id.* So, there is

nothing in the record about a comparator to support a finding that race played a role.

Without evidence of denied paid time off, Wince faced no adverse employment action.

And without a comparator, Wince could not make a *prima facie* case for race discrimination,

even if he had evidence about denied paid time off. As a result, no reasonable jury could find

race discrimination on this issue.

### E.    Bonuses

Wince argues that CBRE and Pierz reduced his bonus in 2018 and 2019 because of his

race. *Id.* at 18 of 31; *see also* Pl.'s Resp. to Defs.' Statement of Facts, at ¶¶ 64–65; Pl.'s

Statement of Facts, at ¶ 20 (Dckt. No. 135); Wince Dep., at 316:10-24 (Dckt. No. 121-1, at 107

of 181). But once again, the evidence simply isn't there.

In 2018, CBRE gave all employees in Work Group 1 (Wince's work group) an annual

bonus of $879.38. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 64 (Dckt. No. 141).

Members of Work Groups 2 and 3 received bonuses of $1,096.37 and $1,058.08, respectively.

*Id.* Then, in 2019, CBRE gave the members of every group the same bonus: $824.05. *Id.* at

¶ 65.

Wince attempts to poke holes in Defendants' evidence. He complains that "[r]ather than

produce hard evidence (i.e., paystubs) in the record that everyone received reduced bonuses,

Defendants rely on the Deposition of Plaintiff (who would not be aware of his colleague's

bonuses) and a Declaration of Nash, who never assisted Plaintiff with the PTO issues that

Plaintiff wishes to resolve, to attempt to make this point." *See* Pl.'s Resp. in Opposition to Mtn.

for Summ. J., at 18 of 31 (Dckt. No. 133).

But Defendants based their statement of facts on the declaration of Maya Nash, a human resources officer for CBRE with personal knowledge of the company's bonus structure. *See* Nash Dec., at ¶¶ 1–2, 6–8 (Dckt. No. 121-5, at 53 of 96). That declaration is a sufficient evidentiary foundation. And on the flipside, Wince offered no evidence of his own. There is no evidence that he received a lesser bonus than similarly situated employees.

So, according to the evidence, at no time did CBRE single out Wince. "The only facts regarding similarly situated coworkers indicate that they were treated the same as [Wince]." *See Hudson v. Miramed Revenue Grp.*, 2016 WL 6948374, at \*5 (N.D. Ill. 2016) (Feinerman, J.).

Treating everyone the same is not discrimination. Equal treatment across the board is not a basis for a claim. If anything, it suggests an even-handed approach by CBRE. Everyone was in the same boat, in the same bonus pool.

No reasonable jury could find that the change in Wince's bonus was race discrimination.

## F.     Tuition Reimbursement

Wince argues that CBRE refused to reimburse him for a project management course, and that he did not have the overtime to pay for the course. *See* Pl.'s Resp. in Opposition to Mtn. for Summ. J., at 18–19 of 31 (Dckt. No. 133); Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 44 (Dckt. No. 44). But Wince fails to make a *prima facie* case of employment discrimination here, too.

Again, when discussing tuition reimbursement, the parties largely discuss opportunities for overtime. The parties do not explain the link between the two. As best as the Court can surmise, Wince apparently needed a certain amount of overtime in order to take the course.

The reason is unclear. Maybe he needed to pay for part of the course himself, but couldn't afford to do so unless he earned extra money through overtime. Or, maybe Wince wasn't eligible to participate in the company's reimbursement program unless he stepped up to

34

the plate and worked extra hours. The reason for linking the tuition reimbursement and the overtime is not clear, but the Court will put that open question to the side.

Wince has claim on this issue. Wince does not provide evidence that Defendants actually denied him overtime, and he offers no evidence of a similarly situated individual who received more opportunities for overtime, either.

Defendants provided evidence that they offered Wince over 800 hours of overtime in 2016, and that he accepted only 56 hours. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 44 (Dckt. No. 141); Ward Dec., at ¶ 3 (Dckt. No. 121-6, at 93 of 96). Wince seems to argue that the evidence could be fraudulent or fabricated, but he doesn't come forward with a non-conclusory reason to reach that conclusion.

Testimony by Wince that the spreadsheet overstates the amount of overtime that the company offered him probably creates an issue of fact on that limited point. The company offered evidence that it offered Wince hundreds of hours of overtime, and Wince testified that that figure was inflated. That testimony was conclusory, but it likely is enough to raise an issue of fact. (By way of comparison, imagine if someone showed you a spreadsheet of the number of times that you have been to Slovakia. A flat denial would probably suffice to create a disputed issue.)

But a dispute about the amount of overtime opportunities is not enough to get to a jury. To bring a discrimination claim, Wince would need to come forward with evidence that the company denied him overtime opportunities based on his race. For example, Wince would need to offer evidence that similarly situated non-black employees received more opportunities for overtime than Wince. But the evidence simply is not there.

35

Wince also argues that CBRE's list of reimbursement-eligible officials omits his name.
*See* Pl.'s Statement of Facts, at ¶ 24 (Dckt. No. 135). But that list is from *2010* – eight years
before Wince looked into any management courses. *See* 2010 Collective Bargaining Agreement
(Dckt. No. 121-2, at 151 of 216); *see also* Defs.' Statement of Facts, at ¶ 24 (Dckt. No. 137).

The record about tuition reimbursement and overtime opportunities cannot support a
claim about race discrimination.

## G.     Verbal Reprimand

Wince argues that Hernandez gave him a verbal warning so that he would look bad. *See*
Pl.'s Resp. to Defs.' Statement of Facts, at ¶¶ 12, 73 (Dckt. No. 141). Wince believes that he
received a reprimand because he is black. *Id.* But Wince admits that the verbal reprimand came
with no loss of pay, and he offers no other tangible repercussions. *Id.* at ¶ 73.

"Unfair reprimands or negative performance reviews, unaccompanied by tangible job
consequences, do not suffice" as adverse employment actions. *See Boss v. Castro*, 816 F.3d 910,
919 (7th Cir. 2016). So, no reasonable jury could find race discrimination based on a verbal
reprimand, standing alone.

## H.     Work Assignments

Wince argues that "the embarrassing, degrading, and demeaning drain-cleaning that was
assigned to Plaintiff post complaints" is an instance of race discrimination. *See* Pl.'s Resp. in
Opposition to Mtn. for Summ. J., at 20 of 31 (Dckt. No. 133); *see also* Pl.'s Statement of Facts,
at ¶ 18 (Dckt. No. 135). But Wince's subjective opinions about these assignments are not
enough to reach a jury. "[S]ubjective impressions about the desirability of particular work
assignments, without more, are insufficient" for race discrimination. *See Ziccarelli v. Dart*, 581
F. App'x 563, 567 (7th Cir. 2014).

And even then, the jobs that Hernandez assigned to Wince fell within the job description

of a Stationary Engineer. *See* Stationary Operating Engineer Job Description (Dckt. No. 121-1,

at 176–77 of 181). There is no contrary evidence.

Requiring an employee to do his or her job isn't an adverse action. There is no evidence

that Hernandez directed Wince to perform certain jobs, but did not make similar assignments to

other similarly situated, non-black Stationary Engineers.

No reasonable jury could find that Defendants discriminated against Wince based on his

race when the company directed him to clean the drains.

## I.    Constructive Discharge

Wince also asserts constructive discharge, and basically makes an *Ortiz* argument. That

is, Wince argues that, even if each individual action were not enough to find employment

discrimination, the totality of the actions led to his constructive discharge. *See* Pl.'s Resp. in

Opposition to Mtn. for Summ. J., at 21–23 of 31 (Dckt. No. 133). This constructive discharge,

then, is the adverse employment action. But Wince faces a fatal flaw in this argument: he has

not provided evidence of a constructive discharge.

"A constructive discharge constitutes an adverse employment action." *Chapin v. Fort-*
*Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). It comes in two different forms.

"In the first form, an employee resigns due to alleged discriminatory harassment." *Id.*

When pursuing a constructive discharge claim about working conditions, a plaintiff must show

conduct that is "even more egregious than the high standard for hostile work environment."

*Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004) (cleaned up). And "a

hostile work environment claim requires sufficient evidence demonstrating (1) the work

environment was both objectively and subjectively offensive; (2) the harassment was based on

37

membership in a protected class or in retaliation for protected behavior; (3) the conduct was
severe or pervasive; and (4) there is a basis for employer liability." *Boss*, 816 F.3d at 920.

In the second form, "an employer acts in a manner so as to have communicated to a
reasonable employee that she will be terminated, and the plaintiff employee resigns." *EEOC v.
Univ. of Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002).

For either form, "the plaintiff [must] show[] that he was forced to resign because his
working conditions, from the standpoint of the reasonable employee, had become unbearable."
*Chapin*, 621 F.3d at 679.

Wince offers arguments under both forms of constructive discharge. For the first form,
Wince rehashes the above arguments. He contends that "the repeated failure to promote, denial
of holiday time off for 17 years, denial of overtime opportunities, failure to award PTO as per the
CBA, and the disregard for Plaintiff's complaints" all provide evidence of harassment. *See* Pl.'s
Resp. in Opposition to Mtn. for Summ. J., at 21 of 31 (Dckt. No. 133). But, as already
explained, none of those episodes amounted to race discrimination. So, none of them could
satisfy the standard for a hostile work environment claim, let alone the even higher standard for a
constructive discharge claim.[10]

For the second form, Wince argues that Defendants made clear that he had no future at
the company. He argues that "Pierz specifically told [him] to look outside of the company for
project management roles. If that is not a clear sign that Wince had no future CBRE, it is unclear
what would be." *See* Pl.'s Resp. in Opposition to Mtn. for Summ. J., at 21 of 31 (Dckt. No. 133).
He offers no other evidence beyond that statement.

---

[10] Wince also makes an argument that he feared for his personal safety. *See* Pl.'s Resp. in Opposition to
Mtn. for Summ. J., at 21 of 31 (Dckt. No. 133). But he cited no evidence that he *did* fear for his safety, so
this argument fails.

But Pierz's statement is not evidence of imminent *termination*. *See Univ. of Chicago Hosps.*, 276 F.3d at 332. His statement is evidence that Wince might need to look elsewhere for a *promotion*.

Wince also agreed that, after Pierz made this statement, he encouraged him to take the project management course at University of Chicago. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 68 (Dckt. No. 141). He took that course in 2018. *Id.* at ¶ 43. And he maintained his job – with no evidence of imminent termination at all – until he left in October 2019. *Id.* at ¶ 80.

So, Wince did not provide evidence that CBRE planned to fire him. And without evidence of an upcoming termination, there is no evidence of a constructive discharge under the second pathway.

**J.    Viewing All the Evidence Together**

Wince has failed to present evidence that would allow a reasonable jury to find that Defendants discriminated against him based on his race in any of the eight subcategories that he has proposed. And he's failed to present evidence that all those individual concerns, taken together, caused his constructive discharge.

Under *Ortiz*, this Court must pile all the evidence into one basket and consider it together. *Ortiz*, 834 F.3d at 765. But even when considering all Wince's evidence at once, the Court can't see a triable fact.

The evidence of discrimination is insubstantial. Wince attributes many work-related issues to discrimination. But after a close look at the record, the evidence simply isn't there.

The evidence shows that he lost out on promotions to more qualified people. He received holiday time off when it was available (often getting what he requested). He earned the same bonuses as his coworkers. He received a tuition reimbursement, too.

39

There is no evidence that the company treated him unfavorably compared to his coworkers when it came to paying overtime, or offering opportunities for overtime, or paying him non-holiday leave.

His boss scolded him once for not doing his job, and Wince got upset when his boss asked him to do jobs that he didn't like. Those workplace frustrations happen from time to time. But Wince offers no evidence linking that treatment to his race.

Wince did testify about racist and abusive comments on his lunchbox. But there is no evidence that the company tolerated any such behavior. In fact, the evidence is that someone scribbled that offensive language, and Wince never told anyone about it.

Finally, to the extent that Wince brings a separate "pattern and practice claim" under section 1981, there is not enough evidence to support that claim, either. *See* Third Am. Cplt., at ¶ 99 (Dckt. No. 96); Pl.'s Resp. in Opposition to Mtn. for Summ. J., at 25–27 of 31 (Dckt. No. 133). "To demonstrate a pattern or practice of discrimination, a plaintiff must show by a preponderance of the evidence that race or gender discrimination was the company's 'standard operating procedure – the regular rather than the unusual practice.'" *Benjamin v. Katten Muchin & Zavis*, 10 F. App'x 346, 352 (7th Cir. 2001) (citation omitted). As discussed, Wince did not provide any evidence of race discrimination, let alone evidence that race discrimination was "standard operating procedure" for CBRE.

As a result, Defendants' motion for summary judgment on the race discrimination claim under Title VII (Count I) and under section 1981 (Count II) is granted.

**II.    Retaliation**

Wince also brings retaliation claims under section 1981 (Count II) and under Title VII (Count III). He points to the fact that he testified in support of his coworker's race

40

discrimination suit. He also points out that he complained about mistreatment (*e.g.*, by filing

grievances), and filed an EEOC complaint. *See* Pl.'s Resp. in Opposition to Mtn. for Summ. J.,

at 6–7 of 31 (Dckt. No. 133).

Like discrimination, a plaintiff can prove retaliation through the direct or indirect method.

The direct method requires a plaintiff to show that "(1) he engaged in protected activity, (2) he

suffered a materially adverse employment action, and (3) there was a causal link between his

protected activity and the adverse action." *Harden v. Marion Cnty. Sheriff's Dep't*, 799 F.3d

857, 862 (7th Cir. 2015).

Under the indirect method, a plaintiff must show that "(1) he engaged in protected

activity, (2) he suffered a materially adverse employment action, (3) he was meeting his

employer's legitimate expectations, and (4) he was treated less favorably than similarly-situated

employees who did not engage in protected activity." *Id.* At that point, "the burden shifts to the

employer to articulate some legitimate, nonretaliatory reason for its action. When the employer

does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason

is a pretext, which in turn permits an inference of unlawful discrimination." *Id.* (cleaned up).

There is no evidence in the record about retaliation. In fact, in his response brief, Wince

does not devote much attention to the issue. He only makes fleeting remarks about retaliation

throughout, seemingly focusing on race discrimination instead.

Wince does not come forward with evidence that the company took action against him

because he testified when his coworker complained about discrimination. And there is no

evidence that the company disciplined him, reprimanded him, or treated him adversely in any

other way because he filed the EEOC complaint or otherwise complained about treatment at

work. *See Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019) ("Title VII prohibits

employers from retaliating against employees for complaining about discrimination."); *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015) ("The question is whether plaintiffs have offered sufficient evidence to create a genuine issue of material fact on whether their complaint caused their terminations.").

Wince seems to argue that each episode discussed above (that is, failure to promote, denied overtime, etc.) is an adverse action taken in response to his protected activities of complaining about race, speaking to outside counsel about his coworker, and filing an EEOC complaint. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶¶ 1–2 (Dckt. No. 137); Pl.'s Resp. to Defs.' Statement of Facts, at ¶¶ 4, 19 (Dckt. No. 141).

Wince's complaints to CBRE about racism in promotions and his complaints to outside counsel came several years before he left the company. That length of time "weaken[s] but does not conclusively bar an inference of retaliation." *See Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014). But "if the time interval standing alone is long enough to weaken an inference of retaliation, the plaintiff is entitled to rely on other circumstantial evidence to support her claim." *Id.*; *see also Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006) ("This court has held a temporal connection of four months failed to establish a causal connection between a protected activity and an adverse action.") (collecting cases). Here, there is no such circumstantial evidence of any significance.

Wince also suffered no adverse action after his EEOC complaint. He points to the verbal reprimand, but that's about it. And that's not enough.

Defendants' motion for summary judgment on the retaliation claims under section 1981 (Count II) and Title VII (Count III) is granted.

42

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted.

Date: March 10, 2022

_____

Steven C. Seeger
United States District Judge

43

CM/ECF LIVE, Ver 6.3.4 - U.S. District Court, Northern Illinois                     https://ecf.ilnd.circ7.dcn/cgi-bin/DktRpt.pl?832945894751063-L_1_0-1

Case: 1:19-cv-01546 Document #: 149 Filed: 04/11/22 Page 47 of 68 PageID #:2690
Case: 22-1593      Document: 24           Filed: 07/11/2022      Pages: 110

APPEAL,GILBERT,PROTO,TERMED

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 6.3.4 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:19-cv-01546
## Internal Use Only

Wince v. CBRE Inc. et al
Assigned to: Honorable Steven C. Seeger
Demand: $200,000
Cause: 28:451 Employment Discrimination

Date Filed: 03/04/2019
Date Terminated: 03/10/2022
Jury Demand: None
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

### Plaintiff

**Sylvester D. Wince**                      represented by **Calvita J. Frederick**
                                            Calvita J. Frederick & Associates
                                            P.o. Box 802976
                                            Chicago, IL 60680
                                            (312) 421-5544
                                            Email: cjf@cjfredericklaw.com
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

V.

### Defendant

**CBRE, Inc.**                              represented by **Jill Susan Vorobiev**
*a Delaware Corp.*                          Reed Smith LLP
                                            10 South Wacker Drive
                                            40th Floor
                                            Chicago, IL 60606
                                            312.207.2858
                                            Email: jvorobiev@reedsmith.com
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Thomas F Hurka**
                                            Morgan Lewis & Bockius, LLP
                                            77 West Wacker Drive
                                            Chicago, IL 60601
                                            (312) 324-1735
                                            Email: thomas.hurka@morganlewis.com
                                            *TERMINATED: 01/15/2021*
                                            *LEAD ATTORNEY*

                                            **Amy I. Harwath**
                                            Reed Smith LLP
                                            10 South Wacker Drive, Suite 3800

Chicago, IL 60606
(312) 207-2873
Email: aharwath@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Dilek Serbest**
Reed Smith Llp
10 S. Wacker Dr.
Ste 4000
Chicago, IL 60606
(312) 207-1000
Email: aserbest@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Emily T. Jastromb**
Morgan, Lewis & Bockius
77 W. Wacker, 5th Floor
Chicago, IL 60601
(312) 324-1189
Email: emily.jastromb@morganlewis.com
*TERMINATED: 01/15/2021*

**Eric Michael Makinen**
Morgan, Lewis & Bockius LLP
110 N Wacker Dr.
Suite 2800
Chicago, IL 60606
(312) 324-1470
Email: eric.makinen@morganlewis.com
*TERMINATED: 01/15/2021*

**Patrick R Duffey**
Morgan, Lewis & Bockius LLP
110 North Wacker Driver
Suite 2800
Chicago, IL 60606
(312) 324-1134
Email: patrick.duffey@morganlewis.com
*TERMINATED: 01/15/2021*

**Defendant**

**Ernie Sanchez**
*Individually and in his Official Capacity as*
*Alliance Director of Facilities at CBRE*
*TERMINATED: 11/16/2020*

represented by **Thomas F Hurka**
(See above for address)
*TERMINATED: 01/15/2021*
*LEAD ATTORNEY*

**Patrick R Duffey**
(See above for address)
*TERMINATED: 01/15/2021*

**Defendant**

**Richard Saulig**
*Individually and in His Official Capacity*
*as Director of Facilities at CBRE*

represented by **Jill Susan Vorobiev**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas F Hurka**
(See above for address)
*TERMINATED: 01/15/2021*
*LEAD ATTORNEY*

**Amy I. Harwath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Dilek Serbest**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Michael Makinen**
(See above for address)
*TERMINATED: 01/15/2021*

**Patrick R Duffey**
(See above for address)
*TERMINATED: 01/15/2021*

**Defendant**

**Sean Holland**
*Individually and In His Official Capacity*
*as Senior Manager of Facilities at CBRE*

represented by **Jill Susan Vorobiev**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas F Hurka**
(See above for address)
*TERMINATED: 01/15/2021*
*LEAD ATTORNEY*

**Amy I. Harwath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Dilek Serbest**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Michael Makinen**
(See above for address)
*TERMINATED: 01/15/2021*

**Patrick R Duffey**
(See above for address)
*TERMINATED: 01/15/2021*

#### Defendant

**Pedro Regdov**                                   represented by **Patrick R Duffey**
*Individually and in His Official Capacity*                    (See above for address)
*as Alliance Director of Facilities at CBRE*                   *TERMINATED: 01/15/2021*
*TERMINATED: 11/28/2020*

#### Defendant

**Joe Hernandez**                                 represented by **Jill Susan Vorobiev**
*Individually and in His Official Capacity*                    (See above for address)
*as Senior Manager of Facilities at*                          *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Thomas F Hurka**
                                                              (See above for address)
                                                              *TERMINATED: 01/15/2021*
                                                              *LEAD ATTORNEY*

                                                              **Amy I. Harwath**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Dilek Serbest**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Eric Michael Makinen**
                                                              (See above for address)
                                                              *TERMINATED: 01/15/2021*

                                                              **Patrick R Duffey**
                                                              (See above for address)
                                                              *TERMINATED: 01/15/2021*

#### Defendant

**Maya Nash**                                     represented by **Jill Susan Vorobiev**
*Individually and in Her Official Capacity*                    (See above for address)
*as Human Resources Manager at CBRE*                          *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Thomas F Hurka**
                                                              (See above for address)
                                                              *TERMINATED: 01/15/2021*
                                                              *LEAD ATTORNEY*

                                                              **Amy I. Harwath**
                                                              (See above for address)

*ATTORNEY TO BE NOTICED*

**Dilek Serbest**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Michael Makinen**
(See above for address)
*TERMINATED: 01/15/2021*

**Patrick R Duffey**
(See above for address)
*TERMINATED: 01/15/2021*

<u>Defendant</u>

**Ernie Pierz**                                    represented by  **Jill Susan Vorobiev**
*Individually and in his Official Capacity as*                    (See above for address)
*Alliance Director of Facilities at CBRE*                         *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Amy I. Harwath**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Dilek Serbest**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Pedro Ravelo**                                   represented by  **Jill Susan Vorobiev**
*Individually and in His Official Capacity*                       (See above for address)
*as Alliance Director of Facilities at CBRE*                      *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Amy I. Harwath**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Dilek Serbest**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/04/2019 | 1 | COMPLAINT filed by SYLVESTER D WINCE; Filing fee $ 400, receipt number 0752-15551172. (Attachments: # 1 Exhibit A CHARGE OF DISCRIMINATION, # 2 Exhibit B NOTICE OF RIGHT TO SUE)(Frederick, Calvita) (Entered: 03/04/2019) |
| 03/04/2019 | 2 | CIVIL Cover Sheet (Frederick, Calvita) (Entered: 03/04/2019) |

| 03/04/2019 | 3 | ATTORNEY Appearance for Plaintiff SYLVESTER D WINCE by Calvita J. Frederick (Frederick, Calvita) (Entered: 03/04/2019) |
|---|---|---|
| 03/05/2019 | | CASE ASSIGNED to the Honorable Matthew F. Kennelly. Designated as Magistrate Judge the Honorable Jeffrey T. Gilbert. Case assignment: Random assignment. (yt) (Entered: 03/05/2019) |
| 03/27/2019 | 4 | MINUTE entry before the Honorable Matthew F. Kennelly: Initial status hearing is set to 9:00 a.m. on 5/1/2019 before Judge Kennelly, in Chambers, Room 2188. Parties are to review and comply with Judge Kennelly's standing initial order, which may be found on his web page, located at http://www.ilnd.uscourts.gov/_assets /_documents/_forms/_JUDGES/KENNELLY/INIT-ORD.htm. Counsel for plaintiff(s) are ordered to cause a copy of this order to be delivered forthwith to each defendant who has not yet appeared by counsel in the same manner that summons has been or is being served on each defendant. (mk) (Entered: 03/27/2019) |
| 04/30/2019 | 5 | MINUTE entry before the Honorable Matthew F. Kennelly: At the Court's instance, the status hearing set for 5/1/2019 at 9:00 AM is advanced to 8:45 AM on that date, in chambers (Room 2188). (mk) (Entered: 04/30/2019) |
| 05/01/2019 | 6 | MINUTE entry before the Honorable Matthew F. Kennelly: Rule 16(b) status hearing held on 5/1/2019 with attorneys for both sides. The individual defendants have not been served with summons. Plaintiff is to attend to this promptly. Status hearing is continued to 5/30/2019 at 8:45 AM. Mailed notice. (pjg, ) (Entered: 05/01/2019) |
| 05/01/2019 | 7 | ATTORNEY Appearance for Defendant CBRE, Inc. by Thomas F Hurka (Hurka, Thomas) (Entered: 05/01/2019) |
| 05/30/2019 | 8 | MINUTE entry before the Honorable Matthew F. Kennelly: Rule 16(b) status hearing held on 5/30/2019 with attorney for plaintiff only. Defendant's attorney fails to appear. Defendant CBRE is ordered to show cause why a sanction should not be imposed. Status hearing is continued to 6/20/2019 at 8:30 am. Defendant's attorney is directed to appear in person. The time for service on the remaining defendants is extended to 6/28/2019. Mailed notice. (pjg, ) (Entered: 05/30/2019) |
| 05/30/2019 | 9 | MOTION by Defendant CBRE, Inc. to dismiss *Counts I, III and IV of Plaintiff's Complaint* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Hurka, Thomas) (Entered: 05/30/2019) |
| 05/30/2019 | 10 | NOTICE of Motion by Thomas F Hurka for presentment of motion to dismiss 9 before Honorable Matthew F. Kennelly on 6/11/2019 at 09:30 AM. (Hurka, Thomas) (Entered: 05/30/2019) |
| 06/07/2019 | 11 | ATTORNEY Appearance for Defendant CBRE, Inc. by Emily T. Jastromb (Jastromb, Emily) (Entered: 06/07/2019) |
| 06/10/2019 | 12 | RESPONSE to Order to Show Cause to status hearing,, set deadlines/hearings, 8 (Hurka, Thomas) (Entered: 06/10/2019) |
| 06/11/2019 | 13 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion hearing held on 6/11/2019. Order to show cause of 5/30/2019 is vacated. Motion to dismiss 9 is denied with respect to counts 1 and 3 as stated in open court. Motion to dismiss 9 as to count 4 is continued to the 6/20/2019 status hearing. Plaintiff is ordered to appear. |

|  |  |  |
|---|---|---|
|  |  | Mailed notice. (pjg, ) (Entered: 06/11/2019) |
| 06/12/2019 | 14 | MINUTE entry 13 before the Honorable Matthew F. Kennelly contained an error and is corrected as follows: Motion hearing held on 6/11/2019. Order to show cause of 5/30/2019 is vacated. Motion to dismiss 9 is denied with respect to counts 1 and 3 as stated in open court. Motion to dismiss 9 as to count 4 is continued to the 6/20/2019 status hearing. **Plaintiff's attorney** is ordered to appear. Mailed notice. (pjg, ) (Entered: 06/12/2019) |
| 06/19/2019 | 15 | MINUTE entry before the Honorable Matthew F. Kennelly: At the Court's instance, the status hearing set for 8:30 AM on 6/20/2019 is moved to 9:15 AM on that date. (mk) (Entered: 06/19/2019) |
| 06/20/2019 | 16 | MINUTE entry before the Honorable Matthew F. Kennelly: Rule 16(b) status hearing held on 6/20/2019 with attorneys for both sides. Plaintiff is given to 7/10/2019 to file an amended complaint. Rule 26(a)(1) disclosures are to be made by 7/17/2019. Status hearing is continued to 7/31/2019 at 9:00 a.m. The parties are directed to discuss and attempt to agree upon a discovery schedule. Mailed notice. (pjg, ) (Entered: 06/20/2019) |
| 07/01/2019 | 17 | WAIVER OF SERVICE returned executed by Sylvester D. Wince. Sean Holland waiver sent on 6/6/2019, answer due 8/5/2019. (Frederick, Calvita) (Docket Text Modified by Clerks Office) Modified on 7/2/2019 (ek, ). (Entered: 07/01/2019) |
| 07/01/2019 | 18 | WAIVER OF SERVICE returned executed by Sylvester D. Wince. Richard Saulig waiver sent on 6/06/2019, answer due 8/5/2019. (Frederick, Calvita) (Docket Text Modified by Clerks Office) Modified on 7/2/2019 (ek, ). (Entered: 07/01/2019) |
| 07/02/2019 | 19 | NOTICE of Correction regarding 18 , 17 (ek, ) (Entered: 07/02/2019) |
| 07/10/2019 | 20 | *FIRST* AMENDED complaint by Sylvester D. Wince against All Defendants (Attachments: # 1 Exhibit Exhibit A Charge of Discrimination, # 2 Exhibit Exhibit B Notice of Right to Sue)(Frederick, Calvita) (Entered: 07/10/2019) |
| 07/10/2019 | 21 | NOTICE by Sylvester D. Wince re amended complaint 20 (Frederick, Calvita) (Entered: 07/10/2019) |
| 07/24/2019 | 22 | STIPULATION regarding amended complaint 20 *(re Extension of Time to Respond)* (Hurka, Thomas) (Entered: 07/24/2019) |
| 07/31/2019 | 23 | MINUTE entry before the Honorable Matthew F. Kennelly: Rule 16(b) status hearing held on 7/31/2019 with attorneys for both sides. Status hearing is continued to 9/26/2019 at 9:00 a.m. Deadline for amending pleadings and adding parties is 2/15/2020. All discovery ordered closed 4/30/2020. The deadline for filing dispositive motions is 5/31/2020. Mailed notice. (pjg, ) (Entered: 07/31/2019) |
| 08/02/2019 | 24 | *Def CBRE (re Partial Mtn Dismiss Pl 1st Amended Complaint)* NOTICE of Motion by Thomas F Hurka for presentment of before Honorable Matthew F. Kennelly on 8/8/2019 at 09:30 AM. (Hurka, Thomas) (Entered: 08/02/2019) |
| 08/02/2019 | 25 | MOTION by Defendant CBRE, Inc. to dismiss *(Partial Mtn Dismiss Pl 1st Amended Complaint)* (Attachments: # 1 Exhibit Collective Bargaining Agreement, # 2 Exhibit Collective Bargaining Agreement, # 3 Exhibit Collective Bargaining Agreement)(Hurka, Thomas) (Entered: 08/02/2019) |

| | | |
|---|---|---|
| 08/05/2019 | 26 | STIPULATION regarding amended complaint 20 *(Extension of Time to Respond re Defs Holland and Saulig)* (Hurka, Thomas) (Entered: 08/05/2019) |
| 08/08/2019 | 27 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court advises that defendant must answer any claim in the amended complaint that is not the subject of a motion to dismiss filed by the defendant. For CBRE, Inc., its answer to all such claims is to be filed by 8/19/2019. (mk) (Entered: 08/08/2019) |
| 08/08/2019 | 28 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion hearing held on 8/8/2019. Response to motion to dismiss 25 due by 9/5/2019; replies due by 9/19/2019. Mailed notice. (pjg, ) (Entered: 08/09/2019) |
| 08/15/2019 | 29 | STIPULATION regarding amended complaint 20 *(2nd) (extension of time to respond re Defs Holland and Saulig)* (Hurka, Thomas) (Entered: 08/15/2019) |
| 08/19/2019 | 30 | *Partial* ANSWER to amended complaint by CBRE, Inc.(Hurka, Thomas) (Entered: 08/19/2019) |
| 08/23/2019 | 31 | MOTION by Defendants Ernie Sanchez, Joe Hernandez, Maya Nash, Richard Saulig, Sean Holland to dismiss *(Partial Mtn Dismiss Pl 1st Amended Complaint)* (Attachments: # 1 Exhibit, # 2 Exhibit)(Hurka, Thomas) (Entered: 08/23/2019) |
| 08/23/2019 | 32 | NOTICE of Motion by Thomas F Hurka for presentment of motion to dismiss 31 before Honorable Matthew F. Kennelly on 8/29/2019 at 09:30 AM. (Hurka, Thomas) (Entered: 08/23/2019) |
| 08/27/2019 | 33 | ATTORNEY Appearance for Defendants CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Pedro Regdov, Ernie Sanchez, Richard Saulig by Patrick R Duffey (Duffey, Patrick) (Entered: 08/27/2019) |
| 08/29/2019 | 34 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion hearing held on 8/29/2019. Plaintiff has leave to file an amended complaint. The briefing schedule set for motion to dismiss 25 are vacated. Motions to dismiss 25 and 31 are entered and continued to a status hearing set for 9/19/2019 at 9:30 a.m. Mailed notice. (pjg, ) (Entered: 08/29/2019) |
| 09/16/2019 | 35 | EXECUTIVE COMMITTEE ORDER: GENERAL ORDER 19-0029 - Pursuant that to the Executive Committee Order entered on September 12, 2019 the civil cases on the attached list have been selected for reassignment to form the initial calendar of the Honorable Steven Seeger; therefore IT IS HEREBY ORDERED that the attached list of 342 cases be reassigned to the Honorable Steven Seeger; and IT IS FURTHER ORDERED that all parties affected by this Order must review the Honorable Stevens webpage on the Courts website for the purpose of reviewing instructions regarding scheduling and case management procedures; and IT IS FURTHER ORDERED that any civil case that has been reassigned pursuant to this Order will not be randomly reassigned to create the initial calendar of a new district judge for twelve months from the date of this Order; and IT IS FURTHER ORDERED that the Clerk of Court is directed to add the Honorable Steven Seeger to the Courts civil case assignment system during the next business day, so that he shall receive a full share of such cases. Case reassigned to the Honorable Steven C. Seeger for all further proceedings. Honorable Matthew F. Kennelly no longer assigned to the case. Signed by Honorable Rebecca R. Pallmeyer on 9/16/2019.(ek, ) (Entered: 09/16/2019) |

CM/ECF LIVE, Ver 6.3.4 - U.S. District Court, Northern Illinois          https://ecf.ilnd.circ7.dcn/cgi-bin/DktRpt.pl?832945894751063-L_1_0-1

Case: 1:19-cv-01546 Document #: 149 Filed: 04/11/22 Page 55 of 68 PageID #:2698
Case: 22-1593     Document: 24          Filed: 07/11/2022     Pages: 110

| 09/17/2019 | 36 | MINUTE entry before the Honorable Matthew F. Kennelly: This case having been reassigned to the Hon. Steven C. Seeger, the status hearings and motion hearing set before Judge Kennelly on 9/19/2019 and 9/26/2019 are vacated. Mailed notice. (pjg, ) (Entered: 09/17/2019) |
|---|---|---|
| 09/23/2019 | 37 | STANDING ORDER dated 9/23/19: This Standing Order applies to all civil cases reassigned to the calendar of District Judge Steven C. Seeger. All previously-set status or motion hearing dates are vacated. Any trials set for September 23, 2019 through October 31, 2019 are cancelled and will be re-set by the Court. Unless otherwise ordered, all other previously-set deadlines and schedules remain intact. The Court will set a date for a reassignment status conference after the parties have filed the joint status report. The Court will address already-pending motions at that conference. The parties are directed not to notice or re-notice any motions, with the exception of emergency motions, before appearing at the reassignment status conference. All emergency motions arising before September 30, 2019 should be noticed before the emergency judge. For all emergency motions arising after September 30, 2019, but before the date of the reassignment conference, the parties are directed to contact chambers at (312) 435-5588. Emergency matters must be true emergencies, meaning that a delay in hearing them would cause serious and irreparable harm to one or more of the parties. To help the Court learn about the case, counsel shall confer, prepare, and file a joint status report by October 1, 2019. If defense counsel has not yet filed an appearance, plaintiff's counsel should prepare the status report. The report shall contain the information requested in the Initial Status Report For Reassigned Case. A Word version of the Initial Status Report is available on Judge Seeger's website at www.ilnd.uscourts.gov. The parties must deliver two (2) copies of the Initial Status Report to the courtroom deputy's drop-box outside room 1728 by October 2, 2019. (See order for further details.) Signed by the Honorable Steven C. Seeger on 9/23/2019: Mailed notice. (sm, ) (Entered: 09/23/2019) |
| 10/04/2019 | 38 | Initial Status for Reassigned Cases by Sylvester D. Wince (Attachments: # 1 Exhibit Wince Transcript 08 29 19)(Frederick, Calvita) (Entered: 10/04/2019) |
| 10/04/2019 | 39 | NOTICE by Sylvester D. Wince re other 38 *initial status for reassigned cases* (Frederick, Calvita) (Entered: 10/04/2019) |
| 10/25/2019 | 40 | MINUTE entry before the Honorable Steven C. Seeger: The initial status hearing is hereby set before Judge Steven C. Seeger on November 1, 2019 at 1:30 p.m. in Courtroom 1725. Mailed notice. (jjr, ) (Entered: 10/25/2019) |

| 11/01/2019 | 41 | MINUTE entry before the Honorable Steven C. Seeger: Status hearing held on November 1, 2019. Counsel discussed the Initial Status Report for Reassigned Case. Defendants have filed pending motions to dismiss. The Court stays Plaintiff's response to those motions to dismiss. The Court shall set a deadline for Plaintiff to amend his complaint at the next status hearing. The Court encourages the parties to discuss settlement. Plaintiff's counsel reported that they made a demand before filing suit. The Plaintiff is to renew that settlement demand, in writing, by November 8, 2019. The Court directs Plaintiff to inform Defendants if any part of their settlement demand includes claims that Plaintiff has not yet alleged in his Complaint. Defendants must respond to the settlement demand, in writing, by December 6, 2019, by either accepting the offer or rejecting it and providing a counter-offer. Status hearing set for December 18, 2019 at 9:00 a.m. Mailed notice. (jjr, ) (Entered: 11/04/2019) |
| --- | --- | --- |
| 12/17/2019 | 42 | ATTORNEY Appearance for Defendant CBRE, Inc. by Eric Michael Makinen (Makinen, Eric) (Entered: 12/17/2019) |
| 12/18/2019 | 43 | MINUTE entry before the Honorable Steven C. Seeger: Status hearing held on December 18, 2019. Plaintiff is granted leave to file an amended complaint by January 15, 2020. By January 22, 2020, Defendants shall file a report that provides an overview of records in their possession, custody, or control about Plaintiff's requests for time off during the five holidays in question in the past 17 years. This matter is hereby referred to the assigned Magistrate Judge for a settlement conference. The settlement conference should take place after Defendants have filed a response (motion or answer) to the amended complaint. The Court encourages the parties to engage in good faith settlement discussions. Status hearing set for January 29, 2020 at 9:00 a.m. Mailed notice. (jjr, ) (Entered: 12/18/2019) |
| 12/18/2019 | 44 | Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Honorable Jeffrey T. Gilbert for the purpose of holding proceedings related to: settlement conference. Mailed notice. (jjr, ) (Entered: 12/18/2019) |
| 12/20/2019 | 45 | MINUTE entry before the Honorable Jeffrey T. Gilbert: This case has been referred to Magistrate Judge Gilbert to conduct a settlement conference. Status hearing scheduled for 1/23/20 at 10:00 a.m. Prior to the status hearing, the parties shall familiarize themselves with the subjects referenced in Magistrate Judge Gilbert's Standing Order for Settlement Conference posted on the Court's website at www.ilnd.uscourts.gov/Judges as applicable to referral cases. Mailed notice (ber, ) (Entered: 12/20/2019) |
| 01/15/2020 | 46 | MOTION by Plaintiff Sylvester D. Wince for extension of time to amend *Complaint* (Frederick, Calvita) (Entered: 01/15/2020) |
| 01/15/2020 | 47 | *Complaint* NOTICE of Motion by Calvita J. Frederick for presentment of motion for extension of time to amend 46 before Honorable Steven C. Seeger on 1/21/2020 at 09:00 AM. (Frederick, Calvita) (Entered: 01/15/2020) |
| 01/16/2020 | 48 | MINUTE entry before the Honorable Steven C. Seeger: Plaintiff's motion for additional time to file second amended complaint (Dckt. No. 46 ) is hereby granted. The Court extends the deadline for Plaintiff to file a second amended complaint to January 22, 2020. No appearance on the motion is necessary. Mailed notice. (jjr, ) (Entered: 01/16/2020) |
| 01/21/2020 | 49 | STATUS Report by CBRE, Inc. (Makinen, Eric) (Entered: 01/21/2020) |

| 01/22/2020 | 50 | SEALED *SECOND* AMENDED complaint by Sylvester D. Wince against All Defendants (Attachments: # 1 Exhibit Exhibit A Charge of Discrimination, # 2 Exhibit B Notice of Right to Sue)(Frederick, Calvita) (Dockt Text Modified by Clerk's Office on 1/29/2020) (jjr, ). (Entered: 01/22/2020) |
| 01/22/2020 | 51 | NOTICE by Sylvester D. Wince re amended complaint 50 *SECOND* (Frederick, Calvita) (Entered: 01/22/2020) |
| 01/22/2020 | 52 | *CORRECTED SECOND* AMENDED complaint by Sylvester D. Wince against All Defendants (Attachments: # 1 Exhibit Exhibit A Charge of Discrimination, # 2 Exhibit B Notice of Right to Sue)(Frederick, Calvita) (Entered: 01/22/2020) |
| 01/22/2020 | 53 | NOTICE by Sylvester D. Wince re amended complaint 52 *CORRECTED SAC* (Frederick, Calvita) (Entered: 01/22/2020) |
| 01/23/2020 | 54 | MINUTE entry before the Honorable Jeffrey T. Gilbert: Status hearing held on 1/23/20 and continued to 2/25/20 at 10:45 a.m. Plaintiff wants the Court to set a date for a settlement conference. Defendant wants more information from Plaintiff before it attends a settlement conference. Plaintiff filed his amended complaint yesterday 52 . Off the record discussions held with counsel concerning the parties' settlement positions. Under the circumstances discussed both on and off the record, the Court is not prepared yet to reserve a firm date for a settlement conference in this case. Plaintiff's counsel shall deliver to Magistrate Judge Gilbert's chambers all prior settlement correspondence between the parties by 1/28/20. If both parties are in a position to set a date for a settlement conference at the next status hearing and dates for the exchange of any additional settlement letters, the Court will set those dates at that time. Mailed notice (ber, ) (Entered: 01/24/2020) |
| 01/29/2020 | 56 | MINUTE entry before the Honorable Steven C. Seeger: Status hearing held on January 29, 2020. Plaintiff's counsel reported that the second amended complaint (Dckt. No. 50 ) was filed inadvertently. By agreement of the parties, the Clerk shall seal the second amended complaint (Dckt. No. 50 ). Defendants' response to the second amended complaint (Dckt. No. 52 ) is due by February 19, 2020. The response to the motion to dismiss (if any) is due on March 18, 2020, and the reply is due on April 1, 2020. The Court and counsel discussed the facts about Plaintiff's Paid Time Off ("PTO"), as well as the supporting documentation, in light of the summary filed by Defendant CBRE (Dckt. No. 49 ). As discussed at the hearing, the Court encourages the parties to exchange documents within the next couple of weeks. Defendant CBRE will produce readily available documents about Plaintiff's PTO requests and usage by February 14, 2020. As discussed, Plaintiff will produce his records to the Defendants within a reasonable time. Overall, the Court encourages a reasonable exchange of documents in a reasonable amount of time (in the short term), so that the parties can assess the strengths and weaknesses of the case. Defendant CBRE shall prepare a summary of its records about Plaintiff's PTO requests, PTO usage, and days worked (i.e., showing what holidays he worked, and what holidays he didn't) by February 26, 2020. The summary will be protected under Rule 408. The Court encourages the parties to have a cooperative dialogue about the underlying facts in the spirit of attempting to narrow or resolve this case. Mailed notice. (jjr, ) (Entered: 01/30/2020) |
| 01/30/2020 | 55 | MINUTE entry before the Honorable Jeffrey T. Gilbert: The Court has received copies of Plaintiff's settlement letters dated September 28, 2018, May 24, 2019, and November 8, 2019. If Defendant responded in writing to any of these settlement |

| | | letters, Defendant promptly shall deliver copies of its letters, if any, to Chambers. Mailed notice (ber, ) (Entered: 01/30/2020) |
|---|---|---|
| 02/03/2020 | 57 | MINUTE entry before the Honorable Steven C. Seeger: Defendants' motions to dismiss the first amended complaint (Dckt. Nos. 25 , 31 ) are denied without prejudice in light of the filing of the second amended complaint (Dckt. No. 52 ), which supersedes the first amended complaint. Mailed notice. (jjr, ) (Entered: 02/03/2020) |
| 02/19/2020 | 58 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Sanchez, Richard Saulig *(Second Amended Complaint)* (Makinen, Eric) (Entered: 02/19/2020) |
| 02/19/2020 | 59 | MEMORANDUM by CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Sanchez, Richard Saulig in support of Motion to Dismiss for Failure to State a Claim 58 (Attachments: # 1 Exhibit A - CBA, # 2 Exhibit B - CBA, # 3 Exhibit C - CBA)(Makinen, Eric) (Entered: 02/19/2020) |
| 02/25/2020 | 60 | MINUTE entry before the Honorable Jeffrey T. Gilbert: Status hearing held on 2/25/20. The Court is available for a settlement conference on the following dates: 3/30/20 at 2:00 p.m., 3/31/20 at 1:30 p.m., 4/1/20 at 1:30 p.m., 4/6/20 at 1:30 p.m. Counsel shall email the Court's courtroom deputy by 2/27/20 confirming which of any of these dates work for both sides. If none of these dates work, then counsel shall confer and propose to the Court's courtroom deputy dates that do word for them. Defendants will submit to Plaintiff their settlement letter responding to Plaintiff's more fulsome settlement demand and letter, with a copy delivered to the Court's chambers, a week before the settlement conference. The Court will set a firm date once the settlement conference is scheduled. Mailed notice (ber, ) (Entered: 02/26/2020) |
| 02/27/2020 | 61 | MINUTE entry before the Honorable Jeffrey T. Gilbert: The parties have confirmed availability for a settlement conference on 3/30/20 at 2:00 p.m. Accordingly, the settlement conference will proceed on that date in accordance with Magistrate Judge Gilbert's Standing Order for Settlement Conference. Defendants will submit to Plaintiff their settlement letter responding to Plaintiff's more fulsome settlement demand and letter, with a copy delivered to the Court's chambers, by 3/23/20. Mailed notice (ber, ) (Entered: 02/27/2020) |
| 03/16/2020 | 62 | MINUTE entry before the Honorable Jeffrey T. Gilbert: Pursuant to Amended General Order 20-0012, the settlement conference set for 3/30/20 is stricken and will be reset in a future order. Mailed notice (ber, ) (Entered: 03/16/2020) |
| 03/16/2020 | 63 | ORDER Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 16, 2020. All open cases are impacted by this Amended General Order. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/16/2020: Mailed notice. (td, ) (Entered: 03/17/2020) |
| 03/18/2020 | 64 | ORDER In light of the public health situation, the Court encourages all parties and their counsel to take precautions, be reasonable, and use common sense in pending cases. In General Order No. 20-0012 dated March 16, 2020 (and amended on March 17), the U.S. District Court for the Northern District of Illinois extended all deadlines in civil cases by three weeks. Parties should assume that this Court will accommodate reasonable requests for extensions in the coming weeks, and counsel |

|  |  |  |
|---|---|---|
|  |  | should show flexibility and accommodate each other too. This Court will grant a six-week extension of fact discovery if requested (and there is no need for an immediate request). Parties should not take depositions before April 17 unless (1) they take place telephonically; and (2) all parties and the witness(es) consent. Even a telephonic deposition often requires an in-person meeting to prepare the witness, so telephonic depositions can go forward only if everyone agrees. If any party or witness wants a deposition to take place in person, the deposition will take place after April 17. Needless to say, that date may change as the public health situation continues to evolve. Parties should continue to make progress in their cases when possible, but in a manner that is consistent with public health and safety. In the meantime, continue to work together cooperatively in the best traditions of our shared profession. The Court thanks all parties and their counsel for their patience and understanding during this difficult time.Signed by the Honorable Steven C. Seeger on 3/18/2020: Mailed notice. (docket1, ) (Entered: 03/18/2020) |
| 03/30/2020 | 65 | ORDER Seconded Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 30, 2020. All open cases are impacted by this Second Amended General Order. Amended General Order 20-0012, entered on March 17, 2020, and General Order 20-0014, entered on March 20, 2020, are vacated and superseded by this Second Amended General. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/30/2020: Mailed notice. (docket2, ) (Entered: 03/31/2020) |
| 04/24/2020 | 66 | ORDER Third Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on April 24, 2020. All open cases are impacted by this Third Amended General Order. Parties are must carefully review all obligations under this Order, including the requirement listed in paragraph number 5 to file a joint written status report in most civil cases. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 4/24/2020: Mailed notice. (docket4, ) (Entered: 04/27/2020) |
| 05/14/2020 | 67 | STATUS Report *(Joint)* by CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Sanchez, Richard Saulig (Makinen, Eric) (Entered: 05/14/2020) |
| 05/15/2020 | 68 | MINUTE entry before the Honorable Steven C. Seeger: The Court reviewed the Joint Status Report (Dckt. No. 67 ) and hereby adopts the proposed dates. The response to the motion to dismiss is due by June 3, and the reply is due by June 17, 2020. Fact discovery will close on November 1, 2020. Dispositive motions are due by December 15, 2020. Mailed notice. (jjr, ) (Entered: 05/15/2020) |
| 05/26/2020 | 69 | ORDER ORDER Fourth Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on May 26, 2020. This Order does not extend or modify any deadlines set in civil cases. For non-emergency motions, no motion may be noticed for presentment on a date earlier than July 15, 2020. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 5/26/2020: Mailed notice. (docket5, ) (Entered: 05/26/2020) |
| 06/03/2020 | 70 | RESPONSE by Sylvester D. Wincein Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Sanchez, Richard Saulig *(Second Amended Complaint)* 58 (Frederick, Calvita) (Entered: 06/03/2020) |

| 06/03/2020 | 71 | NOTICE by Sylvester D. Wince *of Filing* (Frederick, Calvita) (Entered: 06/03/2020) |
|---|---|---|
| 06/05/2020 | 72 | MINUTE entry before the Honorable Steven C. Seeger: The Court reviewed the Notice of Filing (Dckt. No. 71 ). The Court reminds counsel that there is no need to file a notice of filing (unlike a notice of motion) under the Federal Rules and the Local Rules. For more information, read Judge Seeger's webpage at the entry entitled "Notice of Filing vs. Notice of Motion." Id. ("A notice of filing isn't a thing (in federal court, anyway.). Please don't file one."). Mailed notice. (jjr, ) (Entered: 06/05/2020) |
| 06/17/2020 | 73 | REPLY by CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Sanchez, Richard Saulig to response in opposition to motion, 70 (Makinen, Eric) (Entered: 06/17/2020) |
| 07/10/2020 | 74 | ORDER Fifth Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on July 10, 2020. This Order does not extend or modify any deadlines set in civil cases. No motions may be noticed for in-person presentment; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in-court proceeding. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 7/10/2020: Mailed notice. (Clerk4, Docket) (Entered: 07/10/2020) |
| 07/27/2020 | 75 | MINUTE entry before the Honorable Jeffrey T. Gilbert: A telephone conference with the Court is set for 7/31/20 at 10:30 a.m. to discuss resetting the settlement conference that was stricken because of the court closure occasioned by the COVID-19 pandemic. The Court currently is holding settlement conferences via the Microsoft Teams video platform. If the parties want to set a settlement conference, counsel should come to the status hearing prepared with available dates for their clients and themselves in September and October 2020. The toll-free call-in number and access code for the telephone conference is as follows: Dial: 877-336-1829 Access Code: 1022195. When you are connected to the conference system, please keep your phone on mute until your case is called. There may be other people in other cases speaking in the conference when you join the conference and before your case is called. When your case is called, please unmute your phone and remember to say your name each and every time you speak. Mailed notice (ber, ) (Entered: 07/27/2020) |

| 07/31/2020 | 76 | MINUTE entry before the Honorable Jeffrey T. Gilbert: Telephone conference held on 7/31/20. Settlement conference set for 8/18/20 at 1:15 p.m. via Microsoft Teams. Counsel shall email Court's courtroom deputy by the close of business on 8/4/20 to confirm that all necessary participants are available for that date. Counsel shall send an email to the Court's courtroom deputy at Brenda_Rinozzi@ilnd.uscourts.gov that includes all individuals who will attend the settlement conference for each party, as well as the names and email addresses of those individuals. Plaintiff's updated settlement letter shall be delivered to Defendants, with a copy delivered to the Court via the Court's settlement correspondence email at Settlement_Correspondence_Gilbert@ilnd.uscourts.gov, on or before 8/4/20. Defendants' response shall be delivered to Plaintiff, with a copy delivered to the Court via the Court's settlement correspondence email at Settlement_Correspondence_Gilbert@ilnd.uscourts.gov, on or before 8/11/20. Settlement letters are not to be filed on the CM-ECF system. Mailed notice (ber, ) (Entered: 07/31/2020) |
| --- | --- | --- |
| 08/03/2020 | 77 | MINUTE entry before the Honorable Jeffrey T. Gilbert: The parties have confirmed that all necessary participants are available for the settlement conference set for 8/18/20 at 1:15 p.m. via Microsoft Teams. Accordingly, the settlement conference will proceed on that date in accordance with Magistrate Judge Gilbert's Standing Order for Settlement Conference. The dates for the exchange of settlement letters were set in a previous order 76 . Mailed notice (ber, ) (Entered: 08/03/2020) |
| 08/18/2020 | 78 | MINUTE entry before the Honorable Jeffrey T. Gilbert: Settlement conference held on 8/18/20. The parties were unable to resolve the case. All matters relating to the referral of this matter having been addressed, this case is returned to the District Judge. If settlement becomes a realistic possibility in the future, a new referral can be generated. Referral terminated. Mailed notice (ber, ) (Entered: 08/19/2020) |
| 09/28/2020 | 79 | MOTION by Defendants CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Sanchez, Richard Saulig for extension of time to complete discovery *(Joint Motion)* (Makinen, Eric) (Entered: 09/28/2020) |
| 09/28/2020 | 80 | *Joint* NOTICE of Motion by Eric Michael Makinen for presentment of motion for extension of time to complete discovery 79 before Honorable Steven C. Seeger on 10/5/2020 at 09:00 AM. (Makinen, Eric) (Entered: 09/28/2020) |
| 09/29/2020 | 81 | MINUTE entry before the Honorable Steven C. Seeger: The Joint Motion for Extension of Time to Complete Fact Discovery (Dckt. No. 79 ) is hereby granted. The parties requested more time in light of ongoing settlement negotiations, including a recent settlement conference that was unsuccessful but nonetheless productive. As requested, fact discovery will close on February 12, 2021. Dispositive motions are due by March 18, 2021. The parties do not anticipate any further extensions. The parties shall file a status report by November 20, 2020, and shall provide an update on the status of discovery and settlement negotiations. Mailed notice. (jjr, ) (Entered: 09/29/2020) |
| 10/19/2020 | 82 | MINUTE entry before the Honorable Steven C. Seeger: Based on the Court's review of the docket, Plaintiff neglected to file a proof of service, or a waiver of service, as required by Rule 4 for each Defendant. The docket reflects a waiver of service for only two Defendants: Sean Holland and Richard Saulig. (Dckt. No. [17, 18]) "[P]roof of service must be made to the court," so that the Court can confirm that all parties are present and accounted for. See Fed. R. Civ. P. 4(l)(1) (requiring proof of |

| | | |
|---|---|---|
| | | service); Fed. R. Civ. P. 4(d)(4) (allowing the filing of a waiver of service of process in lieu of proof of service). But the "[f]ailure to prove service does not affect the validity of service." See Fed. R. Civ. P. 4(l)(3). Plaintiff must file proof of service, or a waiver of service of process, for each Defendant by October 30, 2020. Mailed notice. (jjr, ) (Entered: 10/19/2020) |
| 10/19/2020 | 83 | WAIVER OF SERVICE by Sylvester D. Wince as to Joe Hernandez. (Frederick, Calvita) (Document is incomplete) (Docket Text Modified by Clerk's Office on 10/20/2020) (pj, ). (Entered: 10/19/2020) |
| 10/26/2020 | 84 | MEMORANDUM Opinion and Order signed by the Honorable Steven C. Seeger on 10/26/2020. For the foregoing reasons, the Court grants Defendants' motion to dismiss Counts IV, V, and VI. The Court denies the motion to dismiss Defendant Sanchez. (Dckt. No. 58 ). Mailed notice. (jjr, ) (Entered: 10/26/2020) |
| 10/26/2020 | 85 | MINUTE entry before the Honorable Steven C. Seeger: The Court denied the motion to dismiss Ernie Sanchez. Still, the Court took note of the allegation that Ernie Sanchez is the wrong party. Counsel shall meet and confer on this issue, and shall exchange appropriate information as necessary. The parties shall file a status report by November 13, 2020 on this issue. Plaintiff is now on notice that, according to Defendant Sanchez, he is the wrong party. If Plaintiff does not dismiss Sanchez, and it later becomes clear that he never belonged in this case in the first place, the Court may award appropriate relief. Mailed notice. (jjr, ) (Entered: 10/26/2020) |
| 10/28/2020 | 86 | WAIVER OF SERVICE returned executed by Sylvester D. Wince. CBRE, Inc. waiver sent on 4/10/2019, answer due 6/9/2019. (Frederick, Calvita) (Entered: 10/28/2020) |
| 10/28/2020 | 87 | WAIVER OF SERVICE returned executed by Sylvester D. Wince. Joe Hernandez waiver sent on 8/13/2019, answer due 10/12/2019. (Frederick, Calvita) (Entered: 10/28/2020) |
| 10/28/2020 | 88 | WAIVER OF SERVICE returned executed by Sylvester D. Wince. Maya Nash waiver sent on 8/12/2019, answer due 10/11/2019. (Frederick, Calvita) (Entered: 10/28/2020) |
| 10/28/2020 | 89 | WAIVER OF SERVICE returned executed by Sylvester D. Wince. Ernie Sanchez waiver sent on 8/14/2019, answer due 10/13/2019. (Frederick, Calvita) (Entered: 10/28/2020) |
| 11/13/2020 | 90 | STATUS Report *(Joint)* by CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Sanchez, Richard Saulig (Makinen, Eric) (Entered: 11/13/2020) |
| 11/16/2020 | 91 | MINUTE entry before the Honorable Steven C. Seeger: As of October 19, 2020, Plaintiff had not filed a proof of service or a waiver of service for each defendant, in violation of Rule 4. The docket only included waivers of service for defendants Holland and Saulig. (Dckt. Nos. 17 , 18 ) So this Court set a deadline of October 30, 2020. (Dckt. No. 82 ) Plaintiff met the deadline for defendants CBRE, Hernandez, Nash, and Sanchez. (Dckt. Nos. 86 - 89 ) Even so, the waivers of service state that the answers of the individual defendants were due on October 11-13, 2020. Id. Defendants have not responded to the complaint by the deadline. But Plaintiff hasn't done anything about it, either. Plaintiff has not notified the Court and has not sought the entry of default, either. All parties appear to be disregarding the Federal Rules. The parties shall meet and confer and file a status report by November 19, 2020. |

|            |    | Plaintiff did not meet the deadline for service of process on defendant Regdov. The reason appears to be that Regdov was a defendant in the first amended complaint (Dckt. No. 20 ) but not the second amended complaint (Dckt. No. 52 ). Plaintiff seemingly dropped Regdov as a defendant sub silentio. Plaintiff's claims against defendant Regdov are dismissed under Rule 4(m). Going forward, the Court expects all parties to comply with the Federal Rules, or this Court may grant appropriate relief. Mailed notice. (jjr, ) (Entered: 11/16/2020) |
|------------|----|----|
| 11/16/2020 | 92 | MINUTE entry before the Honorable Steven C. Seeger: Plaintiff's corrected second amended complaint (Dckt. No. 52 ) refers to parties by their first names. For example, it refers to Plaintiff Sylvester Wince as "Sylvester." Going forward, counsel shall refer to all parties and witnesses by their last names. Mailed notice. (jjr, ) (Entered: 11/16/2020) |
| 11/16/2020 | 93 | MINUTE entry before the Honorable Steven C. Seeger: The Court reviewed the Joint Status Report (Dckt. No. 90 ), which confirmed that Plaintiff sued the incorrect party when he filed claims against Ernie Sanchez. By agreement, Plaintiff's claims against Ernie Sanchez are dismissed. Plaintiff explains that he intended to sue Ernie Pierz, and plans to file a motion for leave to file a third amended complaint. The Court grants Plaintiff leave to file a third amended complaint for the purpose of naming Ernie Pierz as a defendant by November 30, 2020. The Court dismisses Ernie Sanchez and grants leave to file a third party complaint based on the explanation in the Joint Status Report, in the hope of avoiding unnecessary motion practice. The parties can file a motion to seek any additional relief as necessary. Mailed notice. (jjr, ) (Entered: 11/16/2020) |
| 11/19/2020 | 94 | STATUS Report *(Joint)* by CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Richard Saulig (Makinen, Eric) (Entered: 11/19/2020) |
| 11/23/2020 | 95 | MINUTE entry before the Honorable Steven C. Seeger: The Court reviewed the Status Report (Dckt. No. 94 ). As requested, the Court grants Plaintiff leave to include Pedro Ravelo (as well as Ernie Pierz) in the forthcoming third amended complaint by November 30, 2020. Mailed notice. (jjr, ) (Entered: 11/23/2020) |
| 11/28/2020 | 96 | *THIRD* AMENDED complaint by Sylvester D. Wince against All Defendants and terminating Pedro Regdov (Individually and in His Official Capacity as Alliance Director of Facilities at CBRE) (Attachments: # 1 Exhibit A Charge of Discrimination, # 2 Exhibit B CBRE NOTICE OF RIGHT TO SUE)(Frederick, Calvita) (Entered: 11/28/2020) |
| 12/01/2020 | 97 | MINUTE entry before the Honorable Steven C. Seeger: The Court reviewed the Third Amended Complaint (Dckt. No. 96 ), which does not include any claims against Defendant Regdov. As previously ordered (Dckt. No. 91 ), Defendant Regdov is no longer a party. The Court reminds Plaintiff of the duty to file a proof of service or a waiver of service for any newly added defendants as provided in Rule 4. Mailed notice. (jjr, ) (Entered: 12/01/2020) |
| 12/14/2020 | 98 | ANSWER to amended complaint by CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Richard Saulig(Makinen, Eric) (Entered: 12/14/2020) |
| 12/21/2020 | 99 | ATTORNEY Appearance for Defendant CBRE, Inc. by Jill Susan Vorobiev (Vorobiev, Jill) (Entered: 12/21/2020) |

| 12/21/2020 | 100 | ATTORNEY Appearance for Defendant CBRE, Inc. by Amy I. Harwath (Harwath, Amy) (Entered: 12/21/2020) |
| --- | --- | --- |
| 01/14/2021 | 101 | MOTION by Attorney Thomas F. Hurka, Emily T. Jastromb, Patrick R. Duffey, and Eric M. Makinen (Morgan Lewis & Bockius LLP) to withdraw as attorney for CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Richard Saulig. No party information provided (Makinen, Eric) (Entered: 01/14/2021) |
| 01/15/2021 | 102 | ATTORNEY Appearance for Defendants Ernie Pierz, Pedro Ravelo by Jill Susan Vorobiev (Vorobiev, Jill) (Entered: 01/15/2021) |
| 01/15/2021 | 103 | ATTORNEY Appearance for Defendants Ernie Pierz, Pedro Ravelo by Amy I. Harwath (Harwath, Amy) (Entered: 01/15/2021) |
| 01/15/2021 | 104 | MINUTE entry before the Honorable Steven C. Seeger: The Unopposed Motion for Leave to Withdraw as Counsel (Dckt. No. 101 ) is granted. Attorneys Emily T. Jastrom, Eric Michael Makinen, Patrick R Duffey and Thomas F Hurka are terminated as counsel of record.Mailed notice (jjr, ) (Entered: 01/15/2021) |
| 01/19/2021 | 105 | ATTORNEY Appearance for Defendants Joe Hernandez, Sean Holland, Maya Nash, Richard Saulig by Jill Susan Vorobiev (Vorobiev, Jill) (Entered: 01/19/2021) |
| 01/19/2021 | 106 | ATTORNEY Appearance for Defendants Joe Hernandez, Sean Holland, Maya Nash, Richard Saulig by Amy I. Harwath (Harwath, Amy) (Entered: 01/19/2021) |
| 01/29/2021 | 107 | MOTION by Defendants CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Pierz, Pedro Ravelo, Richard Saulig for protective order *Unopposed Motion for Entry of Confidentiality Order* (Vorobiev, Jill) (Entered: 01/29/2021) |
| 02/01/2021 | 108 | MINUTE entry before the Honorable Steven C. Seeger: The Unopposed Motion for Entry of Confidentiality Order (Dckt. No. 107 ) is hereby granted. Order to follow. Mailed notice. (jjr, ) (Entered: 02/01/2021) |
| 02/01/2021 | 109 | AGREED CONFIDENTIALITY Order Signed by the Honorable Steven C. Seeger on 2/1/2021. Mailed notice. (jjr, ) (Entered: 02/01/2021) |
| 02/11/2021 | 110 | MOTION by Plaintiff Sylvester D. Wince for extension of time to complete discovery (Frederick, Calvita) (Entered: 02/11/2021) |
| 02/11/2021 | 111 | RESPONSE by CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Pierz, Pedro Ravelo, Richard Sauligin Opposition to MOTION by Plaintiff Sylvester D. Wince for extension of time to complete discovery 110 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(Vorobiev, Jill) (Entered: 02/11/2021) |
| 02/12/2021 | 112 | REPLY by Sylvester D. Wince to response in opposition to motion, 111 , MOTION by Plaintiff Sylvester D. Wince for extension of time to complete discovery 110 (Attachments: # 1 Exhibit A Plaintiff's dis res, # 2 Exhibit B defendant discovery responses, # 3 Exhibit C HIPAA sent, # 4 Exhibit D Defendants Supp Dis)(Frederick, Calvita) (Entered: 02/12/2021) |
| 02/12/2021 | 113 | MINUTE entry before the Honorable Steven C. Seeger: Plaintiff's motion for extension of time to complete fact discovery (Dckt. No. 110 ) is reluctantly granted. Fact discovery is currently set to close on February 12, 2021, but Plaintiff seeks an extension until March 31, 2021. The requested extension is relatively modest, |

|  |  |  |
|---|---|---|
|  |  | spanning only a month and a half. But the need for an extension seems self-inflicted. The parties have exchanged written discovery, but have not made much progress on depositions. "Only one deposition (that of Plaintiff) has been scheduled." Id. "Plaintiff will seek the depositions of certain Defendants and other witnesses." Id. The Court is quite concerned that Plaintiff apparently "had not produced any documents in the case" as of the beginning of 2021 (and did not do so until January 15, 2021). The Court is troubled by the lack of a prompt response to defense counsel's repeated requests for an amended HIPAA consent form. See Reply (Dckt. No. 112 , at 2). The Court also is concerned that Plaintiff's motion raised discovery issues that defense counsel was hearing for the very first time. It does not appear that Plaintiff has done much to press this case. Ordinarily, the Court would not reward a lack of diligence. But in the reply, "Plaintiff concedes that he has not worked as expeditiously as he had hoped and that this request is being submitted on the eve of the close of discovery." See Reply (Dckt. No. 112 , at 2). The Court does reward candor. Fact discovery will close on March 31, 2021. This is the final extension. Mailed notice. (jjr, ) (Entered: 02/12/2021) |
| 02/12/2021 | 114 | MINUTE entry before the Honorable Steven C. Seeger: Counsel called the Court in the midst of the deposition of Plaintiff. The parties are having technological problems with doing the deposition remotely, so they need to reschedule. The parties shall complete the deposition before the end of the month. Mailed notice. (jjr, ) (Entered: 02/12/2021) |
| 03/04/2021 | 115 | ANSWER to amended complaint by Ernie Pierz, Pedro Ravelo(Vorobiev, Jill) (Entered: 03/04/2021) |
| 03/05/2021 | 116 | ATTORNEY Appearance for Defendants CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Pierz, Pedro Ravelo, Richard Saulig by Dilek Serbest (Serbest, Dilek) (Entered: 03/05/2021) |
| 03/16/2021 | 117 | MOTION by Defendants CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Pierz, Pedro Ravelo, Richard Saulig to clarify *Motion for Clarification Regarding Dispositive Motion Deadline* (Vorobiev, Jill) (Entered: 03/16/2021) |
| 03/17/2021 | 118 | MINUTE entry before the Honorable Steven C. Seeger: The motion for clarification (Dckt. No. 117 ) is granted. As proposed, dispositive motions are due by May 5, 2021. Mailed notice. (jjr, ) (Entered: 03/17/2021) |
| 04/06/2021 | 119 | RESPONSE by Plaintiff Sylvester D. Wince to answer to amended complaint 115 *affirmative defenses* (Frederick, Calvita) (Entered: 04/06/2021) |
| 05/05/2021 | 120 | MOTION by Defendants Ernie Pierz, Joe Hernandez, CBRE, Inc., Pedro Ravelo, Maya Nash, Richard Saulig, Sean Holland for summary judgment (Vorobiev, Jill) (Entered: 05/05/2021) |
| 05/05/2021 | 121 | APPENDIX motion for summary judgment 120 *Appendix of Exhibits in Support of Defendants' Motion for Summary Judgment* (Attachments: # 1 Exhibit 1-4, # 2 Exhibit 5-23, # 3 Exhibit 24, # 4 Exhibit 25-39, # 5 Exhibit 40, # 6 Exhibit 41-50) (Vorobiev, Jill) (Entered: 05/05/2021) |
| 05/05/2021 | 122 | MEMORANDUM by CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Pierz, Pedro Ravelo, Richard Saulig in support of motion for summary judgment 120 (Vorobiev, Jill) (Entered: 05/05/2021) |

| 05/05/2021 | 123 | RULE 56 Statement by CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Pierz, Pedro Ravelo, Richard Saulig regarding motion for summary judgment 120 (Vorobiev, Jill) (Entered: 05/05/2021) |
| --- | --- | --- |
| 05/11/2021 | 124 | MINUTE entry before the Honorable Steven C. Seeger: The Court sets the following briefing schedule on Defendants' motion for summary judgment (Dckt. No. 120 ). Plaintiff's response is due by June 8, 2021. Defendants' reply is due by June 22, 2021. Mailed notice. (jjr, ) (Entered: 05/11/2021) |
| 06/05/2021 | 125 | MOTION by Plaintiff Sylvester D. Wince for extension of time to file response/reply as to motion for summary judgment 120 , memorandum in support of motion 122 , Rule 56 statement 123 (Frederick, Calvita) (Entered: 06/05/2021) |
| 06/07/2021 | 126 | RESPONSE by CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Pierz, Pedro Ravelo, Richard Sauligin Opposition to MOTION by Plaintiff Sylvester D. Wince for extension of time to file response/reply as to motion for summary judgment 120 , memorandum in support of motion 122 , Rule 56 statement 123 125 *Defendants' Response in Opposition to Plaintiff's Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment and/or Motion to Clarify* (Vorobiev, Jill) (Entered: 06/07/2021) |
| 06/07/2021 | 127 | REPLY by Sylvester D. Wince to response in opposition to motion,, 126 (Frederick, Calvita) (Entered: 06/07/2021) |
| 06/08/2021 | 128 | MINUTE entry before the Honorable Steven C. Seeger: Plaintiff's motion for an extension of time (Dckt. No. 125 ) is hereby granted. Plaintiff's counsel seeks a two-week extension in light of recent injuries to her knee and back. (The Court wishes Plaintiff's counsel good health.) The response is due on June 22, 2021. The reply is due on July 13, 2021 (i.e., three weeks later). Plaintiff's counsel should have conferred with defense counsel before filing the motion, especially given that Plaintiff suffered an injury "three weeks ago" (but the Court understands the inclination of holding out hope that there will not be a need to request an extension). Id. The Court needs to know if motions are opposed. Still, the Court routinely grants requests for extensions when they are made in good faith, and the Court encourages counsel to be agreeable with each other. Mailed notice. (jjr, ) (Entered: 06/08/2021) |
| 06/22/2021 | 129 | MOTION by Plaintiff Sylvester D. Wince for extension of time to file response/reply *Defendants' Motion for Summary Judgment* (Attachments: # 1 Exhibit Exhibit A)(Frederick, Calvita) (Entered: 06/22/2021) |
| 06/24/2021 | 130 | MINUTE entry before the Honorable Steven C. Seeger: Plaintiff's 2nd motion for extension of time to file response to defendants' motion for summary judgment (Dckt. No. 129 ) is granted. The motion does not state if it is unopposed. Instead, plaintiff's counsel forwarded an emailed to the Courtroom Deputy from defense counsel stating that there was no objection to the motion. Plaintiff's response is due on June 29, 2021. Defendants' reply is due on July 20, 2021. Mailed notice. (jjr, ) (Entered: 06/24/2021) |
| 06/29/2021 | 131 | MOTION by Plaintiff Sylvester D. Wince for leave to file excess pages (Attachments: # 1 Exhibit Res in Opp Mem)(Frederick, Calvita) (Entered: 06/29/2021) |
| 06/30/2021 | 132 | MINUTE entry before the Honorable Steven C. Seeger: The Court grants the motion for leave to file brief in excess of 15 pages. (Dckt. No. 131 ) Plaintiff shall |

CM/ECF LIVE, Ver 6.3.4 - U.S. District Court, Northern Illinois    https://ecf.ilnd.circ7.dcn/cgi-bin/DktRpt.pl?832945894751063-L_1_0-1

Case: 1:19-cv-01546 Document #: 149 Filed: 04/11/22 Page 67 of 68 PageID #:2710
Case: 22-1593    Document: 24    Filed: 07/11/2022    Pages: 110

| | | |
|---|---|---|
| | | file its response brief as a separate entry on the Court's docket. Mailed notice. (jjr, ) (Entered: 06/30/2021) |
| 07/01/2021 | 133 | MEMORANDUM by Sylvester D. Wince in Opposition to motion for summary judgment 120 (Frederick, Calvita) (Entered: 07/01/2021) |
| 07/01/2021 | 134 | RULE 56.1 Statement *Plaintiff's Response to Defendants* (Frederick, Calvita) (Entered: 07/01/2021) |
| 07/01/2021 | 135 | RULE 56.1 Statement *of Plaintiff's Additional Facts* (Attachments: # 1 Exhibit 1 Third Amended Complaint, # 2 Exhibit 2-1 Plaintiff's Dis Docs, # 3 Exhibit 2-2 Plaintiff's Dis Docs, # 4 Exhibit 2-3 Plaintiff's Dis Dcos, # 5 Exhibit 3 Defts Res Req 4 Prod, # 6 Declaration 4 Dec of Wince, # 7 Declaration 5 Dec of CJF, # 8 Exhibit 6 Alohan Complaint, # 9 Exhibit 7 Wince Resume)(Frederick, Calvita) (Entered: 07/01/2021) |
| 07/20/2021 | 136 | REPLY by CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Pierz, Pedro Ravelo, Richard Saulig to memorandum in opposition to motion 133 *Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment* (Vorobiev, Jill) (Entered: 07/20/2021) |
| 07/20/2021 | 137 | RESPONSE by Defendants CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Pierz, Pedro Ravelo, Richard Saulig to Rule 56 statement, 135 *Defendants' Response to Plaintiff's Statement of Additional Uncontested Material Facts* (Vorobiev, Jill) (Entered: 07/20/2021) |
| 12/16/2021 | 138 | MINUTE entry before the Honorable Steven C. Seeger: On May 11, 2021, this Court set a briefing schedule on Defendants' motion for summary judgment, and directed Plaintiff to respond by June 8, 2021. (Dckt. No. 124 On June 5, 2021, Plaintiff filed a motion for an extension, and requested an additional two weeks. (Dckt. No. 125 ) That request did not comply with this Court's Standing Order, which requires parties to meet and confer about requests for extensions. Even so, this Court granted the request and set a new deadline of June 22, 2021. (Dckt. No. 128 ) On June 22, 2021, the requested due date, Plaintiff filed a second motion for an extension of time, and requested an extension until June 29, 2021. (Dckt. No. 129 ) Plaintiff's counsel added that it was the "second and final request for additional time to respond to the Motion for Summary Judgment." Id. This Court granted the request, and set a new deadline of June 29. But June 29 came and went, and Plaintiff filed nothing (except a motion for extra pages). Plaintiff then filed a response brief on July 1, 2021. (Dckt. No. 133 ) So, in effect, Plaintiff's counsel granted herself two extra days, without approval of the Court. Setting deadlines is the province of the Court, not the parties. Plaintiff's counsel should have complied with this Court's deadline, and should not have granted herself more time. A pending request for extra pages is not a reason to grant oneself extra time. If Plaintiff's counsel needed extra pages or extra time, then Plaintiff's counsel needed to request and receive permission before, not after, the deadline. Going forward, any late filing is subject to being stricken. The Court expect parties to meet all deadlines. Mailed notice. (jjr, ) (Entered: 12/16/2021) |
| 12/16/2021 | 139 | MINUTE entry before the Honorable Steven C. Seeger: On July 1, 2021, Plaintiff responded to Defendant's motion for summary judgment. Docket number 133 is the response brief. (Dckt. No. 133 ) Docket number 134 purports to be the response to Defendant's statement of material facts. (Dckt. No. 134 ) But when you click on the link, that document is another copy of the response brief. That is, docket number |

|  |  | 133 and docket number 134 are the same document. As things stand, Plaintiff has not responded to Defendant's statement of material facts. On July 20, 2021, Defendants filed a reply brief and pointed out that Plaintiff did not file a response to the statement of facts. Maybe counsel simply made a mistake. But if so, Plaintiff's counsel has not corrected it, even though defense counsel highlighted the omission five months ago. This Court will give Plaintiff an opportunity to fix the mistake (if it was a mistake at all). Plaintiff must file a response to the statement of facts by December 20, 2021. If Plaintiff fails to file a response that complies with Local Rule 56.1 by December 20, 2021, the Court will deem all of Defendants' facts to be admitted. No extensions. Any such filing must explain why Plaintiff did not file anything by this Court's deadline, and then apparently filed the same document twice (two days late). It consumes judicial resources unnecessarily when parties file things late, and file the wrong documents. Mailed notice. (jjr, ) (Entered: 12/16/2021) |
|---|---|---|
| 12/18/2021 | 140 | Explanation of Late Filing by Sylvester D. Wince (Attachments: # 1 Exhibit Docket Sheet)(Frederick, Calvita) (Entered: 12/18/2021) |
| 12/18/2021 | 141 | RESPONSE by Plaintiff Sylvester D. Wince *to Defendant's Local Rule 56.1 Statement* (Frederick, Calvita) (Entered: 12/18/2021) |
| 12/30/2021 | 142 | MINUTE entry before the Honorable Steven C. Seeger: The Court reviewed the Explanation of Late Filing (Dckt. No. 140 ) filed by Plaintiff's counsel. The Court accepts the explanation (and wishes a full and speedy recovery to all members of counsel's family). The Court will deem Plaintiff's response to Defendants' statement of facts (Dckt. No. 141 ) to be timely, based on the Court's conclusion that the errant filing was an honest mistake. The Court assumes that Defendants do not seek to file a short reply, limited to anything said by Plaintiff in that document. But if Defendants seek to do so, they may (if necessary). Any reply (again, limited to that particular document) is due by January 13, 2022. Mailed notice (jjr, ) (Entered: 12/30/2021) |
| 03/10/2022 | 143 | MEMORANDUM Opinion and Order Signed by the Honorable Steven C. Seeger on 3/10/2022. For the foregoing reasons, Defendants' motion for summary judgment (Dckt. No. 120 ) is granted. Civil case terminated. Mailed notice. (jjr, ) (Entered: 03/10/2022) |
| 03/10/2022 | 144 | ENTERED JUDGMENT on 3/10/2022. Mailed notice. (jjr, ) (Entered: 03/10/2022) |
| 04/08/2022 | 145 | NOTICE of appeal by Sylvester D. Wince regarding orders 143 , 144 Filing fee $ 505, receipt number 0752-19326639. Receipt number: n (Frederick, Calvita) (Entered: 04/08/2022) |
| 04/08/2022 | 146 | MOTION by Defendants CBRE, Inc., Joe Hernandez, Sean Holland, Maya Nash, Ernie Pierz, Pedro Ravelo, Richard Saulig for bill of costs (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Vorobiev, Jill) (Entered: 04/08/2022) |
| 04/11/2022 | 147 | MINUTE entry before the Honorable Steven C. Seeger: Defendants' motion for a bill of costs is granted (Dckt. No. 146 ). Based on the materials submitted, the Court awards costs to Defendants totaling $2,304.88. Mailed notice. (jjr, ) (Entered: 04/11/2022) |
| 04/11/2022 | 148 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 145 . (jn, ) (Entered: 04/11/2022) |